ERNESTO MANICH, demandante y apelado, *v.* HORTENSIA QUERO, demandada y apelante.

No. 4252.—*Visto:* Marzo 20, 1928. *Resuelto:* Abril 26, 1928.

*Luis López de Victoria,* abogado de la apelante; *Pascasio Fajardo,* abogado del apelado.

El Juez Asociado Señor Texidor, emitió la opinión del tribunal.

Ernesto Manich presentó ante la Corte de Distrito de Mayagüez una demanda contra su esposa Hortensia Quero, solicitando una sentencia de divorcio. Aparte de las alegaciones en cuanto a personalidad, matrimonio, descendencia y bienes, el demandante alegó substancialmente que la demandada le trataba despóticamente, sin respetar sus órdenes, y sin guardarle consideración o afecto, y que en julio de 1924, la demandada había injuriado a la madre del demandante que se hallaba enferma, y a la que había llamado "vieja sin vergüenza", "canalla", "chusma", profiriendo luego las mismas palabras contra el demandante; que en agosto de 1925 la demandada ultrajó al demandante llamándole "canalla", "cabrón", "chulo", y luego le cogió por el cuello para asfixiarlo; que el 11 de marzo de 1926 la demandada fué a la oficina del demandante, a quien provocó e insultó, llamándolo "canalla", sin vergüenza" y "sucio", y dándole una bofetada y golpeándole con una sombrilla; que en noviembre de 1925, y en su domicilio en Mayagüez la demandada insultó, en la misma forma citada, al demandante, y le tiró un muñeco de los que usan los niños

para jugar, ocasionándole una contusión en la rodilla derecha; y el 22 de abril de 1926 volvió la demandada a insultar al demandante en su oficina, y le mordió un dedo; que a consecuencia de todo ello, la vida conyugal se hace insoportable para el demandante, que ha venido sufriendo moralmente por la actitud de su esposa. La demanda está jurada.

A tal demanda opuso Hortensia Quero una excepción previa, que fué declarada sin lugar; y en contestación jurada, la dicha demandada negó que de ese matrimonio existieran sólo dos hijos, ya que para la fecha en que se radicó la demanda estaba la demandada en embarazo, de su esposo, y el 12 de julio de 1926, había nacido el tercer hijo legítimo de su matrimonio; negó las alegaciones de injurias y mal trato; y alegó, como materia nueva, su buen comportamiento como esposa; que siempre habían llevado demandante y demandada una vida feliz, hasta que el demandante, sin razón justificada, había abandonado a la demandada, la que alega, por información, que el demandante quería casarse con otra mujer.

En el juicio ambas partes presentaron prueba, justificándose documentalmente el matrimonio, y el nacimiento de dos de los hijos, Elena, nacida en enero de 1923, y Josefa, nacida en 18 de febrero de 1925.

La prueba testifical del demandante consistió en su propia declaración y la de Arquelio Morán, Agustín Rivera y María Rivera.

El demandante, al declarar, confirmó el hecho del nacimiento del tercer hijo, como su hijo legítimo; y en ese sentido se entendió enmendada la demanda, como alegando tal nacimiento, si bien con posterioridad a la fecha de radicación de la demanda; insistió en los hechos alegados, con respecto a las ofensas a la madre, y a él mismo en julio de 1924, y a las otras ocasiones a que se refiere la demanda, y lo mismo con respecto a los actos de violencia señalados. Dijo que haría más o menos un año que vivía separado de su esposa;

que después que ésta insultó a la madre del declarante siguió él viviendo con ella; y después de lo sucedido en agosto de 1925, también siguieron viviendo juntos, hasta que ocurrió el hecho del 11 de marzo de 1926 cuando él estaba en la Colectiva, que entonces dejó de vivir con ella; que le pasa a su esposa para sus gastos y los de los niños.

El testigo Arquelio Morán dijo que en marzo y abril de 1926 era empleado de la Colectiva en Mayagüez, trabajando como ayudante del Sr. Manich, el demandante; que el 11 de agosto de 1926, la demandada Hortensia Quero, a la que conoce, fué a la oficina de la Colectiva donde trabajaba su esposo, y que insistió en hablar con él, y él se negaba, y que ella le hurgaba con un paraguas, y le molestaba para que hablara con ella y el marido envió al declarante a que llamara al Jefe de la Colectiva; y ella cuando vió que el esposo no le hizo caso, le dió en la boca; que en marzo de 1926 la demandada fué también a la oficina de su esposo en la Colectiva, y quería hablar con él, y como él no quisiera atenderla, ella le insuló, llamándole sin vergüenza, chulo y cabrón.

Agustín Rivera declaró que en 1925 y 1926 vivía en Mayagüez, y conoce al demandante y a la demandada, a ésta de vista; que el 11 de marzo de 1926, estando el testigo en la bomba de vender gasolina, se presentó la demandada en la oficina de Manich en la Colectiva, y entonces vino el mozo de la Colectiva a pedir al declarante que le permitiera usar su teléfono para avisar al Jefe de la Colectiva para que mandara sacar a la demandada de la oficina, y el declarante fué a la oficina y vió a la demandada que halaba por el saco al demandante, y le llamaba sin vergüenza y canalla; y en fecha posterior la demandada volvió a la oficina de Manich, y ella iba con su hermano, y ella estuvo hablando con Manich, y le llamó sin vergüenza y le haló por el saco.

María Rivera declaró que en 1924 residía en Ponce, en La playa, y conocía a la madre del demandante, de quien la

testigo es pariente; que estando aquella señora enferma, se presentó una noche la demandada, e insultó a la enferma llamándola chula, cabrona y otras cosas; que la señora enferma murió de aquella enfermedad; que la enferma, en aquel tiempo, estaba sorda.

En su defensa la demandada presentó prueba testifical, que consistió en los siguientes testimonios:

El de la propia demandada, que negó los hechos alegados por su esposo, y dijo que nunca había tenido diferencias con su suegra, con la que tenía amistad desde antes de casarse con Manich, y la que nunca le dió motivo de disgusto, y a la que asistió en su última enfermedad, yendo constantemente a verla, con su esposo; que nunca tuvo, en el tiempo en que vivían en Ponce, disgusto alguno con su esposo; que en agosto de 1925 tenían ella y su esposo una sirvienta llamada Angelina López que vivía y dormía en la casa, y muy rara vez salía; que la declarante nunca ha dirigido a su esposo las palabras sin vergüenza, cabrón, canalla, chulo, o cualquiera de ese estilo; que en marzo de 1926, fué a ver a su esposo a la oficina en la Colectiva, porque se había retrasado una semana en mandarle el diario, y fué a pedírselo, y él lo entregó, pero ella no tuvo altercado con él; que él la trató mal, y la dijo que se fuera, pero ella no le contestó; que el 11 de noviembre de 1925, la declarante vivía con su esposo en Mayagüez, y que ni en esa fecha, ni nunca insultó a su esposo, ni le llamó canalla, sin vergüenza, o perro, ni le tiró muñeco alguno; que en 22 de abril de 1926 tuvo que volver a la Colectiva, a pedir sus diarios, y el esposo se los entregó, pero dijo a la demandada que se fuera en seguida, que él tenía que hacer, y mandó al muchacho de la oficina a buscar al jefe para que la echara a ella, lo que causó sentimiento a la testigo, pero no tuvo altercado con él, y solamente le dijo al jefe de la oficina lo que pasaba; que no insultó a su marido, ni le ha pegado nunca; que no vive con su esposo desde el 16 de noviembre, en que él la dijo

que si quería fuera a Ponce a ver a su mamá, y la mandó un taxi para ir a la estación, y la despidió muy cariñoso, y cuando ella regresó de Ponce en la misma semana, encontró la puerta de la casa cerrada con candado, y no encontró en la casa a su esposo, ni encontró nada de la ropa de él, y le buscó inútilmente hasta que le encontró en su oficina, le llamó, y él le dijo que la odiaba, y que no quería vivir más con ella, y le dió el dinero de los diarios; y desde entonces no viven juntos; que al volver de Ponce encontró la cerradura de la puerta de su casa, rota; que no fué a Ponce contra la voluntad de su esposo, quien la mandó el taxi para irse; que no ha tenido disgustos con su esposo, ni discusiones con él en su oficina, a la que ha ido a pedirle los diarios; que se llevó a Ponce las llaves de su casa porque así se le ordenó su esposo, y estuvo en Ponce desde el lunes hasta el sábado de la misma semana.

Angelina López declaró que había servido en casa de Ernesto Manich y su esposa del 13 de julio al 4 de octubre de 1925, en Ponce, y que vivía y dormía en la casa, y estuvo allí todo el mes de agosto, y nunca observó pelea o disgusto entre los esposos, ni la demandada en ocasión alguna insultó a su esposo; que ellos se llevaban muy bien.

Fermín Ríos declaró que el 11 de marzo de 1926 él trabajaba en la oficina de La Colectiva en Mayagüez; que ese día, por la tarde, la demandada estuvo en dicha oficina, y habló con su esposo; que en esa ocasión el testigo estaba en la oficina, y observó a los esposos, y que él no presenció riña entre ellos, ni oyó que la demandada insultara a su esposo, y sí los oía hablar en voz baja, y que "poco más o menos estarían en una discusión," no en actitud de "garata"; que allí no se aglomeró gente, ni ese día Hortensia Quero le dió a su esposo con algo; que el 22 de abril de 1926, Hortensia Quero, la demandada, fué a la oficina de su esposo, en La Colectiva, a buscar el dinero que se había atrasado en mandarle, y el testigo la vió cuando llegó, mientras

estuvo allí, y cuando se fué, y entre ella y el marido no hubo riña alguna; que sí oyó que ella le preguntó a Manich por qué no le había enviado el semanal, y que él la dijo que se fuera, que no quería verla, y ella se fué; que ella no le dió al esposo. A la parte demandante contestó: que no está ahora el testigo colocado en La Colectïva; que no salió del empleo por queja de Manich, sino porque ganaba poco; que no tuvo disgusto alguno con Manich, y que salió del empleo porque no le aumentaron el sueldo.

Ramón Guanil dijo ser cuñado de la demandada, y conoce a los dos esposos, a los que ha visitado con frecuencia, en Ponce; que los esposos Manich se llevaban muy bïen, y la última vez que los vió el testigo fué en 1925 en Ponce; que nunca vió disgustos entre ellos, y él siempre se ha portado bien con ella.

Sobre tales alegaciones y prueba, la Corte de Distrito de Mayagüez dictó sentencia, en fecha 28 de diciembre de 1926, declarando que la ley y los hechos están en favor del demandante y en contra de la demandada, y con lugar el divorcio por causa de trato cruel e injurias graves, y disponiendo que las dos hijas Rosa Elena e Irma Josefa queden bajo el cuidado y potestad del demandante. Contra esta sentencia se interpuso la presente apelación, a la que se ha adherido el fiscal de este tribunal, que en su alegato pide la revocación de la sentencia.

La demandada y apelante señala cinco errores.

██ El primer señalamiento se refiere a que la corte declaró sin lugar la excepción previa de falta de causa de acción.

La apelante fundamenta equivocadamente este señalamiento de error. La excepción de falta de hechos suficientes para determinar una causa de acción, ha de nacer de la misma apariencia de la demanda (*upon the face of the complaint*). Los hechos tal y como aparecen alegados han de ser la base de la excepción previa. En este caso, la base

de la argumentación de la apelante parece ser la de que los actos de maltrato o de injuria se alegan como realizados en cinco distintas ocasiones, mediando entre ellas períodos de tiempo relativamente largos, y que, después de algunos de esos actos han seguido las relaciones entre los esposos, naciendo descendencia de ese matrimonio; de donde la apelante parte para sostener el perdón de las injurias anteriores, y la reconciliación. Pero esto, que puede resultar de la prueba traída al juicio, no aparece así de la demanda; y no podía estimarse por la corte como causa de la excepción previa formulada.

Luego la apelante modifica el camino de su razonamiento, y alega que de la demanda no aparece que los actos cometidos por la demandada tuvieran la maliciosa intención de mortificar al esposo, ni produjeran en éste un sufrimiento moral que le hiciera insoportable la vida conyugal.

La alegación VI de la demanda incluye el concepto de que, a consecuencia de la actitud de la demandada, la vida conyugal se hace insoportable para el demandante, quien ha venido sufriendo moralmente con tal actitud. Quizá no es la mejor manera de establecer la alegación; pero en este caso hay otros extremos más importantes a considerar, y que pueden decidir la apelación.

El segundo señalamiento hace relación a que la corte no consideró condonadas las injurias que se alegan en ciertos párrafos de la alegación V de la demanda.

Es cierto que el niño Agustín, hijo del demandante y la demandada, nació después de la fecha de presentación de la demanda de divorcio.

Si se tiene en cuenta el período de gestación en la especie humana, es evidente que este niño Agustín fué engendrado alrededor de nueve meses antes de la fecha de su nacimiento, y, teniendo presente que la demanda se presentó en 1°. de mayo de 1926, la época de la concepción tiene que encontrarse en el mes de agosto o septiembre de 1925. No pudiendo

ocurrir tal concepción sin el acto fisiológico requerido, ni ese acto tener lugar sin una previa reconciliación, es evidente que ésta tuvo lugar antes de dicho mes de agosto o septiembre de 1925, y que ella apareja la condonación de las injurias anteriores a esa fecha, si existieron. En ese concepto, en cuanto a tales injurias, si se probaron, ellas no serían causa de divorcio, aunque sí podrían presentarse en este caso como materia de corroboración de las causas surgidas con posterioridad a tal fecha. (Artículo 172 del Código Civil de Puerto Rico.) Y así, los hechos que se alegan como ocurridos en julio de 1924 y primeros días de agosto de 1925, no serían causa para el divorcio.

La apelante alega que ese niño Agustín nació el 12 de julio de 1926. Pero no se presentó certificación del Registro Civil, y lo único que encontramos es esa alegación en la contestación de la demandada, y la admisión hecha por el demandado al declarar, de que el niño nació después de presentada la demanda. (Página 6, récord taquigráfico.)

No puede saberse, por el texto de la sentencia, cuáles fueron los hechos en que se fundó la corte para decidir el caso. Pero es indudable que, cualquiera que fuera el acierto en su apreciación, a más de las alegadas injurias en las fechas de julio de 1924 y primeros días de agosto de 1925, hay alegadas otras de posterior fecha.

Es posible que el más importante de los señalamientos de error sea el que aparece bajo el número tercero. Se trata de la apreciación del trato cruel e injurias graves.

Es conveniente anotar que la sentencia que en este caso dictó la corte, dice, en la parte necesaria, así:

" . . . declarando con lugar la acción de divorcio ejercitada por el causal de trato cruel e injurias graves . . ."

En la sentencia no se habla de que se haya formulado y unido a la misma una opinión exponiendo los hechos probados y las razones jurídicas de la decisión. Suponemos que se haya hecho así, en cumplimiento del artículo 227 del

Código de Enjuiciamiento Civil; pero no la tenemos en los autos ante nosotros. De todas formas, la causa de divorcio sostenida es la de trato cruel e injurias graves, lo que constituye el punto a estudiar en este señalamiento de error.

La prueba del demandante en cuanto a esa causa de acción es deficiente. El afirma, en su declaración, extremos que no tienen corroboración alguna; él llega a decir que la demandada en una ocasión intentó ahogarle, y en otra, le golpeó y le mordió un dedo; y no se encuentra en el récord nada que corrobore tales afirmaciones. Antes por el contrario, la sirvienta Angélica, que vivió con los esposos en Ponce, sostiene que se llevaban bien y que nunca los vió u oyó pelear o insultarse; y el testigo Fermín Ríos declara que en las ocasiones en que vino la demandada a la oficina del demandante no tuvieron riña alguna. En cambio los testimonios de Arquelio Morán y Agustín Rivera, no tienen la robustez y seguridad que serían necesarias para convencernos de los hechos alegados. Arquelio Morán habla de una ocasión en que la demandada hurgaba al demandante con un paraguas, y luego le dió en la boca, pero sin hacer las afirmaciones que había hecho, en su declaración, el demandante en lo que afecta a los hechos que él dice ocurrieron en su oficina, en la que se hallaba Morán.

Pero, aunque la prueba hubiera sido otra, y fuera satisfactoria, entendemos que para justificar una sentencia de divorcio por trato cruel e injurias graves se exigen otros elementos.

Este tribunal ha hecho declaraciones concretas e inequívocas en esta materia.

En el caso *Cobos* v. *Clausel*, 19 D.P.R. 799, dijo este tribunal:

"Además, hemos resuelto en los casos de *Cruz* v. *Domínguez* y de *Quiñones* v. *Rodríguez* que para obtener un divorcio a causa de injurias graves, tales injurias graves deben llegar al extremo de la crueldad."

En el caso *Cruz* v. *Domínguez,* 8 D.P.R. 580, este tribunal declaró que:

" . . . para que las frases ofensivas den al demandante el derecho a obtener el divorcio, deben ser de tal naturaleza, o ir acompañadas de tales actos que el malestar producido equivalga en sí mismo al trato cruel."

En la decisión de este tribunal en el caso *Fernández* v. *Hernández,* 8 D.P.R. 237, se ha dicho:

"La trascendencia del divorcio requiere como causal para su rompimiento injurias públicas y notorias, pues como dice Q. Mucius Scaévola, página 421 del tomo 2º:

" 'La injuria leve, en la generalidad de los casos, es obra de un momento de pasión o de arrebato. La injuria grave es casi siempre la determinante del odio o de la malquerencia, y a mayor gravedad y frecuencia de la injuria, mayor y más reconcentrado el encono y más profundo el rencor.' "

En el caso *Galip* v. *Drag,* 28 D.P.R. 818, se había intentado probar, en la corte inferior, el trato cruel y las injurias graves, y se llegó a establecer que la demandada, en una ocasión, había insultado a su esposo y le había tirado piedras. Este tribunal examinó detenidamente la prueba, y encontró que la corte inferior había ido muy lejos al apreciar la gravedad del único acto específico de agresión e injurias, que fué más bien el resultado de un disgusto violento, y que no revelaba la intención de injuriar gravemente; y aplicando la teoría de los casos *Figueroa* v. *Pierluissi,* 25 D.P.R. 496, *Axtmayer* v. *Ortiz,* 19 D.P.R. 501, y *Fernández* v. *Hernández,* antes citado, revocó la sentencia de divorcio.

En el caso *Figueroa* v. *Pierluissi,* el demandante había alegado que durante una grave enfermedad, su esposa le abandonó, y que al quejarse él de su conducta, ella le contestó despectivamente que ella no podía consumir su juventud al lado de un miserable, que estaba arrepentida de haberse casado con él, y que le odiaba y le despreciaba, y estaba dispuesta a romper el lazo matrimonial. En la decisión de este

caso fué citado el de *McDonald* v. *McDonald,* 155 Cal. 665, el cual contiene una perfecta teoría moral y jurídica, que debía ser fundamental para decidir todo caso de divorcio. El divorcio, extremo remedio para una situación también extrema, no puede convertirse en fácil puerta de escape para eludir el cumplimiento de sagrados deberes, y en fuente de inmoralidad.

En el caso *Biaggi* v. *Gómez,* 35 D.P.R. 860, este tribunal ha confirmado su doctrina de los casos *Cruz* v. *Domínguez* y *Figueroa* v. *Pierluissi,* que quedan citados en esta opinión.

La prueba del trato cruel y de las injurias graves, debe ser consistente y sólida; y no es bastante que se pruebe que en ocasiones aisladas, y en momentos de excitación, la parte demandada haya pronunciado palabras fuertes y ofensivas, sino que los actos que las acompañan, las circunstancias en que se pronuncian, su reiteración e insistencia, demuestren que ellas no deben su origen a un estado de ánimo momentáneo y fugaz, sino a un estado de espíritu persistente, de odio y rencor; y asimismo que el efecto producido sea el de verdadera crueldad. Para romper un vínculo que es base de la institución fundamental de la sociedad, no basta con una prueba cualquiera. Y la que en este caso se ofreció y practicó adolece de inconsistencia y debilidad, y no convence de la existencia de la causa de acción que se ejercita.

Conviene recordar aquí que la sentencia en este caso decreta el divorcio por los causales de trato cruel e injurias graves, y no por una sola de ellas. No encontramos el trato cruel, en los elementos probatorios traídos a este caso; y en cuanto a las injurias graves, la prueba es deficiente, como se ha dicho antes.

Convenimos con la apelante en lo que se refiere al tercer error señalado en su alegato. Y siendo el quinto señalamiento de error muy parecido al tercero, ya que versa sobre la indebida apreciación de la prueba y su suficiencia para decretar el divorcio, decidiremos en la misma forma.

No es necesario tratar de los demás extremos de la apelación.

*La sentencia apelada debe ser revocada.*

Los Jueces Asociados Sres. Wolf y Aldrey disintieron.