OSCAR MORALES, demandante y apelado, *v.* AMÉRICA VÉLEZ, demandada y apelante.

Número 10903.

*Sometido:* 9 de julio de 1953. *Resuelto:* 12 de febrero de 1954.

*Justo A. Casablanca,* abogado de la apelante; *A. Quirós Méndez,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del tribunal.

La apelante fué demandada por su esposo en el Tribunal Superior de Puerto Rico, Sala de San Juan, en acción de divorcio por la causal de trato cruel e injurias graves. Negadas las alegaciones esenciales de la demanda, se procedió a la vista del caso en sus méritos, dictándose más tarde sentencia declarando roto y disuelto el vínculo matrimonial, concediendo al demandante la patria potestad sobre una hija menor, y su custodia a la demandada. Ésta apeló de dicha sentencia.

La evidencia presentada para sostener las alegaciones de la demanda consistió de la declaración de un testigo llamado Virgilio León, y de la prestada por el propio demandante. Aquél testificó que en cierto día del mes de abril del año 1952, mientras se encontraba en el cuartel de la Policía, en Guaynabo, entró la demandada en forma violenta y en su presencia, dirigiéndose al demandante, le dijo "que si él creía que con cien pesos que le pasaba ella podía vivir; que tenía que pasarle por lo menos ciento veinticinco . . .", llamándole además "sucio y sinvergüenza". El demandante, en síntesis declaró,

que es teniente de la Policía y que ha pertenecido a dicho cuerpo desde hace veintitrés años; que del matrimonio con la demandada nacieron tres hijos, dos de ellos ya mayores de edad; que en su vida matrimonial ha sido "bastante desafortunado", habiendo tolerado el mal carácter de su esposa debido a los hijos; que la demandada le ha perseguido constantemente en forma cruel, sin darle motivo alguno, tratando de vejarle en todo momento. Por cuestiones baladíes le llamaba intruso y le "maldecía la madre", diciéndole "que era una vieja bruta"; que le "traía en una vida de desasosiego", y que ese trato se ha repetido en forma continua, casi siempre en privado; al llegar a la casa le recibía "con una garata, con insultos". Debido al carácter de la demandada ha tenido disgustos con vecinos, y que en Canóvanas, Trujillo Alto y Guaynabo, en presencia de sus subalternos "irrumpía ella en el cuartel, y en forma violenta, bien por una cosa o por otra", le insultaba; debido a ese mal trato, del que fué objeto casi desde que se casó, "desde que tuvimos la primera nena", está el demandante "constantemente en un estado nervioso", y "apenas puede trabajar tranquilo"; tuvo la mala suerte de casarse con una señora que no le ha sabido comprender y "que ha llegado a la conclusión de que por el mero hecho de que estoy casado con ella, tiene derecho a maltratarme".

En cuanto a la prueba presentada por la demandada, baste decir que ésta testificó negando todo lo alegado por el demandante, y que la testigo Emilia Serrano declaró que en los últimos cuatro años fué vecina de las partes en litigio, a quienes visitaba con frecuencia; que la demandada trataba muy bien a su esposo; nunca la oyó insultarle, ni presenció peleas entre ellos; tampoco oyó al demandante insultar a la demandada; se trataban "cariñosamente".

Solicita la apelante que revoquemos la sentencia, sosteniendo que el tribunal a quo erró al apreciar la prueba, y al considerarla suficiente para decretar el divorcio.

■■ En las conclusiones de hecho, que pasamos a numerar para facilitar su discusión, el tribunal a quo expone, en parte, lo siguiente:

(1) "El demandante . . . y la demandada . . . contrajeron matrimonio . . . , el día 9 de abril de 1925 y durante su matrimonio han procreado tres hijos, dos de los cuales ya son mayores de edad y la tercera hija . . . tiene la edad de catorce años.

(2) "El demandante . . . hace aproximadamente 23 años que es miembro de la Policía Insular de Puerto Rico y actualmente ostenta el grado de Teniente.

(3) "Durante los últimos cuatro años, el demandante ha estado destacado en servicio con la Policía Insular en los pueblos de Canóvanas, Trujillo Alto y Guaynabo y durante ese tiempo la esposa demandada ha residido en Puerta de Tierra . . . , principalmente por la conveniencia de la educación de su hija menor, y el demandante venía a su hogar . . . ocasionalmente cuando tenía días libres o vacaciones y le entregaba mensualmente a su esposa . . . la suma de $100 para atender los gastos de ella y de su hija.

(4) "Las relaciones entre el demandante y la demandada vienen tirantes desde hace ya algunos años y el demandante y posiblemente la propia demandada han venido desenvolviéndose dentro de esas dificultades y tirantez sin romper definitivamente indudablemente pensando en sus hijos.

(5) "¿Cómo se originó esta tirantez e incomprensión? No lo sabemos ni las partes lo han explicado.

Nuestra conclusión, sin embargo, es, tomando en cuenta nuestras impresiones del temperamento y carácter de las partes por su manera de declarar y su compostura general, que la demandada asumió una actitud agria contra el demandante y éste por su parte asumió una actitud de indiferencia y alejamiento.

(6) "Cuando el demandante en sus días libres venía a veces al hogar la demandada le atacaba e insultaba, rebajándole en su dignidad de hombre, y además por el carácter agrio de ella ocasionándole disgustos con los vecinos. En ocasiones en que por retraso en la remesa de los $100 o por insistencia de la demandada en el aumento de dicha pensión la demandada se personaba en el cuartel de la policía donde servía su esposo . . . y delante de sus subalternos lo llenaba de insultos y provocaciones, habiendo ocurrido estos incidentes en los cuarteles de la policía de Canóvanas, Trujillo Alto y de Guaynabo. El último incidente

fué a principios del mes de abril de 1952 en el cuartel de Guaynabo, en el cual, encontrándose el demandante en dicho cuartel, llegó la demandada y dirigiéndose al demandante le expresó en forma violenta que él tenía que pasarle más de $100 y lo llamó sucio y sinvergüenza en presencia de un chófer del municipio de Guaynabo que se encontraba allí en el cuartel. Ese día dos policías estaban durmiendo en una habitación contigua al salón principal del cuartel donde ocurrió el incidente y el demandante pudo cerciorarse después que estos subalternos suyos habían oído lo que allí ocurrió.

(7) "La actitud de la demandada, tanto en el hogar como cuando se ha personado en los cuarteles de la policía donde ha servido o sirve el demandante, le ha producido a éste desasosiego de tal forma que no puede trabajar tranquilo, sintiéndose perjudicado y rebajado ante los ojos de sus subalternos y acosado en todas partes por la actitud agria de su esposa, la demandada."

En cuanto a la conclusión número 4, la realidad es que la demandada se opuso al divorcio. En relación con la número 5, si las circunstancias mencionadas en ella justificaran las inferencias derivadas de las mismas por el tribunal a quo, la acritud del carácter de la demandada, sin mas, no ayudaría al demandante. *Figueroa* v. *Pierluisi*, 25 D.P.R. 496, 499, 500; 17 Am. Jur., pág. 179. Refiriéndonos a la conclusión número 6, no encontramos base alguna en la prueba para sostener la manifestación de que la demandada "atacaba" al demandante cuando éste llegaba a la casa, como hemos visto, ocasionalmente. Tampoco encontramos ninguna en que pueda apoyarse la manifestación de que le "insultaba rebajándole en su dignidad de hombre", puesto que aunque el demandante declaró que al llegar al hogar era insultado, se limitó a la expresión general de que la demandada le insultaba, sin que explicara la clase o carácter de los insultos. Igual situación existe en lo que se refiere a lo expuesto por el tribunal a quo en relación con los disgustos con vecinos, toda vez que el demandante también hizo mención a ellos en términos imprecisos y generales, sin explicar hechos ilustrativos de la naturaleza e importancia de los mismos. Se notará que se expone

en la conclusión que comentamos que cuando por retraso en la remesa o cuando la demandante insistía en que ésta fuera aumentada, se personaba aquélla en los cuarteles y "llenaba de insultos y provocaciones" al demandante, habiendo ello ocurrido en Canóvanas, Trujillo Alto y Guaynabo. Sin embargo, según el propio demandante, en *una sola* ocasión le visitó la demandada en un cuartel de policía para pedirle un aumento en la remesa mensual, incidente que ocurrió en el de Guaynabo, poco tiempo antes de presentarse la demanda, ocasión en que ésta le llamó "sucio y sinvergüenza", palabras que por sí solas, y consideradas aisladamente, no justificarían una sentencia de divorcio, *Galip* v. *Drag*, 28 D.P.R. 818, 820; *Manich* v. *Quero*, 38 D.P.R. 93, 104. En cuanto a las ocasiones en que fué la demandada a Trujillo Alto y Canóvanas, el demandante todo lo que dijo fué que la demandada entraba en los mencionados cuarteles y en forma violenta, *"bien por una cosa o por otra", le insultaba,* incurriendo el demandante en la misma omisión de no informar a la corte de los hechos, de cuáles habían sido los insultos, ni de lo que diera lugar a ellos.

En vista del anterior análisis, la conclusión número 7 no requiere comentarios.

▮▮▮▮ En las conclusiones de derecho dice el tribunal a quo que desde el momento en que una esposa no usa de los medios que dicho tribunal menciona, para lograr que el esposo le preste ayuda económica, y "opta por usar el medio coercitivo de la actitud agria e insultante, puede con ello incurrir, *si su actitud es de forma continua y persistente,* en causal de divorcio por trato cruel si con ello le produce a su esposo tal intranquilidad, desasosiego y sufrimiento que le haga imposible a la vez la continuación de las relaciones matrimoniales", como ha ocurrido a su entender, en el caso de autos. (Bastardillas nuestras.) Asumiendo, sin decidirlo, que sea correcto el principio de derecho expuesto en dicha conclusión, nos encontramos con que falta el hecho en que se basa, a saber,

que la demandada "continua y persistentemente" usó "el medio coercitivo de la actitud agria e insultante" para lograrlo. Ya hemos dicho que el demandante mencionó una sola ocasión en la que la demandada le increpó porque solicitaba un aumento en la remesa mensual. Fuera de ese incidente—el ocurrido en Guaynabo—a ninguno se refirió el demandante que tuviera esa motivación. En ningún momento sostuvo que las desavenencias matrimoniales se debieran a tal causa.

En cuanto a la aseveración imputándole a la demandada, el uso "persistente y continuo" del "medio coercitivo de la actitud agria e insultante", tampoco encontramos que esté apoyada en o justificada por la prueba. No hay duda que el demandante declaró que la demandada le "ha estado constantemente persiguiendo en una forma cruel", tratando *"siempre"* de vejarle, y que ese trato ha sido continuo, habiéndolo sufrido por largo número de años, pero tampoco puede haberla de que tales manifestaciones carecen de eficacia legal, en ausencia de evidencia sobre los hechos y actos que se caracterizan por el demandante de continuos y persistentes. Se ha resuelto muy acertadamente, que las manifestaciones de un testigo imputando a la parte demandada en una acción de divorcio, el haber realizado ciertos actos "siempre" o "continuamente", son de escaso valor, por ser demasiado vagas e indefinidas, *De Lisi* v. *De Lisi*, 12 A.2d 468, 470, (Pa.), y que al considerar si existe aquella prueba satisfactoria y clara de la existencia de la falta o del mal que la ley considera suficiente para decretar un divorcio, el tribunal debe ser informado de lo que ha hecho la parte demandada; no de lo que los testigos concluyan que ha hecho, o del carácter que le den a su conducta. *Edmond's Appeal*, 57 Pa. 232, 233. Meras expresiones generales carecen de eficacia legal si no vienen acompañadas de los hechos específicos en que se basan. *Bishop* v. *Bishop*, 30 Pa. 412, 415, *De Lisi* v. *De Lisi*, supra. No puede haber duda de la importancia que tiene el factor de persistencia y continuidad de los actos crueles y las injurias gra-

ves, cuando se invoca la causal en que se funda la demanda, pero en el caso de autos, por las razones expuestas, no se demostró que existiera, cosa difícil de comprender, en vista de que el demandante se queja de una vida conyugal, que según él, ha sido un largo y doloroso vía crucis.

Hemos resuelto que "para romper un vínculo que es base de la institución fundamental de la sociedad", por la causal de trato cruel o injurias graves, "no basta con una prueba cualquiera", *Manich* v. *Quero*, supra, siendo doctrina firmemente arraigada y tradicionalmente reconocida en el derecho, que la parte que solicita el divorcio por la referida causal, está obligada a presentar evidencia preponderante y a hacer una demostración clara y satisfactoria de su caso, *Manich* v. *Quero*, supra; *Hanireu* v. *Hanireu*, 26 A.2d 381, 383, (Md.); *Jacobson* v. *Jacobson*, 36 A.2d 189, 190, (Pa.), debiendo probar actos específicos de crueldad o de injurias, no siendo suficiente que declaren los testigos dando sus conclusiones o exponiendo opiniones o generalidades. Nelson *Divorce and Annulment*, 2d. ed., págs. 292, 293; *Walldren* v. *Walldren*, 63 S.W.2d 845, 847 (Ark.); *De Lisi* v. *De Lisi*, supra; *Esenwein* v. *Esenwein*, 167 Atl. 350, 351 (Pa.); *Edmond's Appeal*, supra.

▪ El matrimonio puede disolverse por una de las causas que prescribe el Código Civil. El estado no obliga a nadie a vivir maritalmente si existe motivo legal para el divorcio, pero si se solicita ese remedio, el que lo pretenda, está en el deber de probar la causal que invoque, con evidencia, que de ser creída por el juzgador, tenga el efecto legal de establecerla. Con ese deber no cumplió el demandante en el caso de autos, y somos de opinión que resolver lo contrario equivaldría a desnaturalizar la causal invocada por él.

▪ Estamos perfectamente conscientes de la deferencia que generalmente merecen las conclusiones de las cortes sentenciadoras en cuanto a los hechos, pero igualmente lo estamos de la doctrina, firmemente establecida, de que cuando la

prueba resulta insuficiente para sostener la sentencia, el error cometido es uno de derecho, y procede su revisión por este Tribunal.

*La sentencia apelada deberá ser revocada.*

El Juez Presidente Sr. Snyder disintió.

El Juez Asociado Sr. Belaval concurre en el resultado.

Opinión disidente emitida por el JUEZ ASOCIADO SEÑOR ORTIZ.

Disiento de la opinión de este Tribunal. El problema planteado en esta apelación se refiere exclusivamente a la suficiencia de la prueba presentada por el demandante para justificar una sentencia de divorcio por trato cruel o injurias graves, ya que el tribunal de San Juan resolvió válidamente el conflicto en la prueba en favor del demandante. Estoy convencido de que la prueba presentada por el demandante, creída por el tribunal a quo, fué suficiente para demostrar un caso de trato cruel o injurias graves.

Antes de iniciar la discusión de la prueba presentada en este caso, debemos asumir que no es necesario, para que quede establecida la causal de trato cruel o injurias graves, el que se demuestre que haya mediado agresión física o que la salud del demandante haya quedado quebrantada. Ha habido expresiones de este Tribunal al efecto de que, para que quede justificada una sentencia de divorcio por la causal de trato cruel o injurias graves, debe presentarse un caso de violencia o sufrimiento mental que perjudiquen seriamente la salud del cónyuge demandante. *Márquez* v. *Rivera*, 68 D.P.R. 719; *Figueroa* v. *Pierluisi*, 25 D.P.R. 496. El inciso 4 del artículo 96 de nuestro Código Civil establece dos categorías alternativas, la de trato cruel y la de injurias graves. En cuanto a esta última, independientemente del trato cruel, si existe una situación de insultos sistemáticos, persistentes y continuos que hagan intolerable la vida matrimonial a uno de los cónyuges, quedando destruída su felicidad, procede una sentencia de divorcio. No es necesario, para que exista esa situación,

que la salud física del demandante sufra quebrantos. No se trata ya de una agresión física que produzca perjuicios concretos a la salud. Se trata de un ataque moral o síquico sistemático que destruya la felicidad o la tranquilidad doméstica. No se necesita una agresión a la salud para que se produzca una situación doméstica intolerable. En esos casos de insultos o injurias sistemáticas, la mayoría de las cortes en los Estados Unidos no requieren una demostración de perjuicio a la salud, si se demuestra que la cohabitación conyugal se ha convertido en intolerable. Nelson, Divorce and Annulment, Vol. 1, pág. 221; *Zuerrer* v. *Zuerrer*, 27 N.W.2d 260; *Barnes* v. *Barnes*, 95 Cal. 171. Ésa es la regla que debe ser adoptada en esta jurisdicción. Naturalmente, una agresión física o una conducta que perjudique la salud de un cónyuge, pueden justificar un divorcio. Lo que estamos diciendo es que, aun en ausencia de tales factores, si la cohabitación matrimonial se ha hecho intolerable debido a insultos o injurias sistemáticas y continuas, estaría también justificada una sentencia de divorcio. 17 Am. Jur. 177.

En el caso de *Axtmayer* v. *Ortiz*, 19 D.P.R. 499, 501, se reconoce que puede haber una situación que haga intolerable la vida entre los cónyuges, indicándose que podría ser procedente un divorcio por trato cruel o injurias graves si la conducta es "tal que destruye la tranquilidad del espíritu y felicidad de la parte agraviada, de manera tal que perjudique la salud o anule enteramente los fines del matrimonio." Si existe una situación de insultos, recriminaciones, vejámenes o injurias que son tan sistemáticas, continuas, repetidas, persistentes, constantes y habituales, que hagan la vida matrimonial intolerable e insostenible para el otro cónyuge, entonces las injurias deben ser catalogadas como graves y como destructoras de los fines del matrimonio, estando justificada entonces una sentencia de divorcio. *Harner* v. *Harner*, 206 S. W. 385; *Smith* v. *Smith*, 200 S. W. 1129; *Lampert* v. *Lampert*, 72 S. W.2d 168; *Purcell* v. *Purcell*, 247 S. W. 760;

Nelson, ob. cit., pág. 220, 226, 229. El curso continuo y sistemático de injurias y vejámenes crea una situación en que se hacen probables los insultos posteriores, esto es, la persistencia crea una probabilidad de continuación habitual. *Quigley* v. *Quigley*, 38 N.E.2d 624. Las injurias deben ser tan graves y continuadas que traspasen los límites de la condescendencia, indulgencia o el perdón razonable. *Preas* v. *Preas*, 67 S.W.2d 1013. Las injurias no deben ser insignificantes, aunque sean irritantes, y, para que sean graves, deben ser de tal magnitud y continuidad que hagan que la víctima pierda su felicidad, definitiva y fundamentalmente. *O'Donnell* v. *O'Donnell*, 216 S.W.2d 764. Bajo tales circunstancias se establece una situación doméstica intolerable para una de las partes y sin valor alguno para la sociedad. Nelson, ob. cit., pág. 229.

Si las injurias son tan sistemáticas y continuas que hagan la vida conyugal intolerable para una de las partes, esto es, la "intolerabilidad", es una cuestión de hecho a ser resuelta por el tribunal de primera instancia. *Rogers* v. *Rogers*, 70 S.W.2d 211; *Tomaier* v. *Tomaier*, 123 P.2d 548 (Cal.); *Polk* v. *Polk*, 123 P.2d 550 (Cal.). No se puede establecer una medida o criterio específico en cuanto a un período de tiempo determinado en que persistan las injurias, ni en cuanto a su magnitud concreta, ya que no existen escalas de sensibilidad. Nelson, ob. cit., pág. 211, 215. Pero las injurias deben ser tales que, consideradas conjuntamente, sean tan persistentes y habituales que justifiquen una conclusión al efecto de que la vida matrimonial se ha convertido en intolerable. Nelson, ob. cit., pág. 226.

Las conclusiones del tribunal sentenciador en cuanto a la gravedad de las injurias deben estar sostenidas adecuadamente por la evidencia presentada. *Cairo* v. *Cairo*, 87 Cal. App.2d 558, 197 P.2d 208. En el caso de autos, la prueba ofrecida por el demandante y creída por el tribunal a quo demuestra sustancialmente una situación de injurias e insultos proferidos por la demandada contra el demandante, en

forma tan continua, prolongada, sistemática, habitual y persistente, que la vida matrimonial se ha convertido en intolerable e insostenible para el demandante. Esa práctica de insultos, vejámenes y recriminaciones se extendió por un período aproximado de veintitrés años. Quedó destruída la tranquilidad hogareña del demandante. Bajo esas circunstancias, no hay utilidad social alguna en mantener la integridad de una vida matrimonial en que se ha perdido la felicidad. Fué correcta la sentencia de divorcio dictada por el tribunal a quo.

Considerando el principio de que un curso de conducta continuo y sistemático de agresiones morales y síquicas lesiona, en ocasiones, en mayor grado la integridad matrimonial que una agresión física, veamos la prueba presentada en este caso. No olvidemos que el tribunal a quo le impartió entera credibilidad al testimonio del demandante, el cual debe ser considerado como enteramente veraz a los fines de esta apelación. Pues bien, el demandante declaró, en parte, lo siguiente:

(1) Que él ha venido tolerando el mal carácter de su esposa desde que se casó; que él ha tolerado eso debido a sus hijos; que ella lo ha estado *constantemente* persiguiendo en una forma cruel, tratando *siempre* de vejarló, lo trataba de intruso, le maldecía su madre y en vida de ella decía que era una vieja bruta *y que eso se ha repetido en forma continua.*

(2) Que cuando él llegaba a su casa ella lo recibía con insultos, con garatas; que él ha tenido disgustos con vecinos debido a ella; que en varias ocasiones ella iba al cuartel de la policía y en forma violenta lo insultaba en presencia de los guardias.

(3) Que él ha estado constantemente en un estado nervioso y apenas podía trabajar tranquilo; que por cualquier nimiedad era un insulto.

El demandante declaró, por lo tanto, que había mediado una práctica continua y sistemática de insultos que hacían la

vida intolerable para él. Ello, a mi juicio, es suficiente para justificar la ruptura del vínculo matrimonial. Este tribunal resuelve lo contrario, a base de dos consideraciones, a saber:

(1) Que tales manifestaciones del demandante constituyen conclusiones, y no hechos.

(2) Que el demandante no probó actos o hechos específicos y concretos.

Es indudable, a mi juicio, que el insulto constituye una realidad objetiva y un hecho concreto, y no una conclusión. El significado y la connotación del término "insultos" constituyen materia de conocimiento general. Si una persona ha insultado a otra, ello constituye un hecho concreto. Tanta calidad de hecho tiene el insulto como la agresión física. Podría ser una conclusión una expresión sobre la "gravedad" del insulto, o sea, sobre su importancia relativa, pero no sobre el insulto en sí. El hecho final ("ultimate fact"), esto es, el inferido finalmente de otros hechos, podría ser la "injuria grave", que podría ser insuficiente como prueba. Pero el insulto es el hecho básico o intermedio del cual se puede inferir el hecho final o conclusión de la "injuria grave", al igual que, en un accidente, la velocidad es el hecho básico o intermedio del cual se puede inferir el hecho final o conclusión de "negligencia". Si un testigo declara que otra persona lo ha insultado en varias ocasiones, ello implica que han ocurrido varios de esos hechos en esas ocasiones. Se infiere de la opinión de este tribunal que el hecho consistiría en el contenido del insulto, esto es, en las palabras específicas expresadas, que pueden dar lugar a distintas inferencias en cuanto a si esas palabras eran o no constitutivas de un "insulto". Pero es que, como hemos dicho, la definición del término "insulto" tiene una connotación generalmente aceptada que no se presta a distintas interpretaciones y, por lo tanto, tiene la categoría de un hecho concreto y no de una hipótesis debatible. De otro lado, ya hemos visto que si una práctica de insultos es o no es intolerable para el cónyuge, esto es, la "intolerabilidad",

es una cuestión *de hecho* a ser resuelta por el tribunal sentenciador, como lo fué en el caso de autos.

En cuanto a la supuesta necesidad de especificar detalladamente los insultos, sería impracticable e injusto el exigir del demandante que, a través de más de veinte años, mantuviese un catálogo minucioso de la naturaleza específica de los insultos, como requisito previo al divorcio. En el curso ordinario de los acontecimientos una persona no recuerda la fecha y el contenido exacto de esos insultos. Pero la imposición de ese requisito sería el resultado de la opinión de este Tribunal en el caso de autos. Ello constituiría un gravamen irrazonable que anularía la eficacia de la causal estatutaria de "injurias graves", en su sentido de una práctica continua de insultos. O sería imposible probar tal causal, o habría que recurrir a testimonio artificial, de dudosa autenticidad, para probar los detalles de sucesos ocurridos hace varios años. De otro lado, estoy convencido de que, desde un punto de vista a tono con las realidades de un matrimonio, una práctica general, continua y sistemática, de insultos, destruye más la integridad de un matrimonio que determinados actos específicos, aislados y esporádicos. Los actos aislados son síntomas de la degeneración del vínculo matrimonial, pero el curso de conducta, persistente y habitual, es la degeneración en sí, que produce una situación intolerable. Los actos específicos pueden ser perdonados y son compatibles con la reconciliación, pero la conducta agresiva sistemática tiene mayor virtualidad para producir una situación intolerable que destruya los fines legítimos del matrimonio. Tal como se resuelve en *Klaus* v. *Klaus*, 156 N. W. 963, cuando las injurias graves constituyen un curso continuo de conducta, la especificación o particularidad en cuanto a fecha y sitios no deben ser requeridos, por ser impracticables.

De todos modos, hubo prueba suficiente en este caso en cuanto a actos específicos. El propio demandante declaró que en varias y repetidas ocasiones la demandada le maldecía

su madre y decía que ella era una vieja bruta; que en repetidas ocasiones ella lo llamó intruso; que en varias ocasiones él tuvo disgustos con los vecinos debido a ella (cuestión de hecho), y que ella lo recibía constantemente con insultos y con garatas, y que en varias ocasiones lo insultaba en el cuartel de la policía. Hubo testimonio al efecto de que en el Cuartel de la Policía de Guaynabo ella lo llamó sucio y sinvergüenza. Toda esa prueba debe ser considerada como cierta en esta apelación y es más que suficiente para caracterizar en forma específica y concreta la conducta de la demandada y su efecto sobre el demandado.

Debemos recordar la regla generalmente aceptada al efecto de que al ser apelada una sentencia de divorcio, el tribunal en apelación debe darle un gran peso y eficacia a la sentencia del tribunal de primera instancia, no solamente en cuanto a la credibilidad de los testigos, sino en cuanto al peso y suficiencia de la prueba, debiendo ser respetada y sostenida la sentencia del tribunal a quo a menos que se demuestre claramente que la sentencia es errónea y a menos que se demuestre un claro abuso de discreción, ya que la cuestión de si debe decretarse un divorcio en virtud de un trato cruel o injurias graves es cuestión que descansa en la sana discreción del tribunal de primera instancia, y no debe dejarse sin efecto una sentencia de divorcio a menos que la evidencia presentada sea tan trivial que demuestre un abuso de discreción. *Mc. Cahan* v. *Mc. Cahan*, 190 Pac. 460 (Cal.); *Andrews* v. *Andrews*, 120 Cal. 184; *Piatt* v. *Piatt*, 184 Pac. 470; *Davis* v. *Davis*, 207 Pac. 923; *Hansen* v. *Hansen*, 261 Pac. 503; *Dupes* v. *Dupes*, 184 Pac. 425; *Polakoff* v. *Polakoff*, 196 Pac. 778; *Anderson* v. *Anderson*, 204 Pac. 426; *Jenkins* v. *Jenkins*, 265 Fed. 1015; *Hell* v. *Hell*, 289 Pac. 227; *Keener* v. *Keener*, 18 Cal.2d 445; *Scheibe* v. *Scheibe*, 134 Pac.2d 835; *Ungemach* v. *Ungemach*, 142 Pac.2d 99; *Serns* v. *Serns*, 161 Pac.2d 417. Solamente cuando la sentencia de divorcio carezca de base sustancial en la prueba es que ella debe dejarse

sin efecto. *Dupes* v. *Dupes*, supra; *Robinson* v. *Robinson*, 159 Cal. 203. Cuando la prueba tienda razonablemente a sostener la sentencia, ésta debe ser respetada en apelación. *Barker* v. *Barker*, 218 Pac. 812. Debe sostenerse la sentencia de divorcio si ella no está claramente contra el peso de la prueba. *Cox* v. *Cox*, 261 Pac. 548; *Mc Daniels* v. *Mc Daniels*, 4 P.2d 112. En cuanto a una sentencia de divorcio por trato cruel e injurias graves, el criterio del tribunal sentenciador en cuanto a la susceptibilidad del demandante al trato cruel no debe ser dejado sin efecto en apelación. *Speers* v. *Speers*, 287 Pac. 138. Debe ser sostenida la sentencia a menos que la prueba claramente requiera una conclusión contraria. *Kiakona* v. *Kiakona*, 36 Hawaii 49. En apelación, el testimonio debe ser considerado e interpretado en la forma más favorable posible al apelado, para sostener la sentencia. *Eberly* v. *Eberly*, 36 A.2d 729. En apelación, debe dársele el peso mayor posible a la sentencia. *Van Camp* v. *Camp*, 199 Pac. 885. Una conclusión del tribunal sentenciador al efecto de que hubo trato cruel debe ser sostenida a menos que sea contraria a la preponderancia de la evidencia. *Klaus* v. *Klaus*, supra. La misma regla general arriba señalada se establece en 27 C.J. secs. 863, 864, 865.

La razón que informa la regla de respeto al criterio del tribunal de primera instancia en cuanto al peso y suficiencia de la prueba en casos de divorcio se refiere al hecho de que tal tribunal ejerce directamente funciones cuasi-tutelares en cuanto a las relaciones de familia, incluyendo la relación matrimonial, y que tal tribunal, en representación del Estado, está en contacto directo con las partes, puede medir y apreciar su temperamento, actitud, susceptibilidad y disposición, y está en condiciones más adecuadas que el tribunal en apelación para apreciar las circunstancias exactas que rodean el matrimonio y para determinar la deseabilidad o inconveniencia de mantener o no el vínculo matrimonial. Puede precisar directamente las realidades que rodean la causal alegada, la

gravedad de las injurias, la crueldad del trato y el impacto sobre el cónyuge inocente, sobre su integridad psicológica, de una práctica continua y sistemática de insultos. Puede comprobar si determinada situación es o no es intolerable o si ha destruído o no la tranquilidad matrimonial. Si tal intolerabilidad o ausencia de tranquilidad ha de ser o no permanente depende de la probabilidad de su repetición en el futuro, esto es, de la probabilidad de que una práctica de insultos se convierta en un hábito. Ello a su vez depende, en gran parte, en el temperamento y disposición de las partes. Por ello se ha resuelto, en *Payne* v. *Payne*, 16 A.2d 165, que en casos de divorcio, en que el carácter, disposición, actitud mental y temperamento de las partes, constituyen factores importantes, la sentencia del tribunal de primera instancia no debe ser revocada a menos que sea claramente errónea. Véase *Kolberg* v. *Kolberg*, 19 N.W.2d 480. De la anterior discusión surge además que en un caso de injurias graves lo esencial no estriba en las injurias específicas, sino en la probabilidad de su repetición, en su tendencia a convertirse en un curso sistemático de conducta y en sus resultados, esto es, si hacen intolerable la vida matrimonial, y ello constituye una cuestión de hecho a ser resuelta por el tribunal de primera instancia.

Estoy consciente de que este Tribunal, en la gran mayoría de las ocasiones en que se ha planteado el problema, ha resuelto que determinada conducta no ha sido constitutiva de trato cruel o injurias graves. En algunos de esos casos se han ignorado las realidades envueltas en la asociación matrimonial, y se ha mantenido artificialmente un vínculo que ya ha perdido su razón de ser, con bases y raíces corroídas e inherentemente desintegradas. No es necesario ni útil, a mi juicio, discutir esos casos, ni la multitud de casos resueltos en los Estados Unidos. La regla vigente en cada jurisdicción responde a la peculiar filosofía imperante en esa jurisdicción en cuanto a la deseabilidad del divorcio, y en cuanto al énfasis que se le dé al concepto de la indisolubilidad del matrimonio.

Sin adoptar punto de vista alguno que pueda ser absoluto, ya que todo es relativo a las circunstancias de cada caso, creo, sin embargo, conveniente el señalar una perspectiva general en cuanto al problema.

El problema básico en este caso, se refiere a la suficiencia de la prueba presentada por el demandante para demostrar "el trato cruel o las injurias graves" señalados como causal de divorcio por el inciso 4 del artículo 96 de nuestro Código Civil, esto es, si las conclusiones de hecho formuladas por el tribunal a quo sirven de fundamento suficiente para la ruptura del vínculo matrimonial, bajo tal articulado. El problema es dual, esto es, (1) el significado de los conceptos de "trato cruel" y de "injurias graves" y (2) si los hechos de este caso lo colocan dentro de esas categorías. La fraseología general utilizada por el legislador al referirse a "trato cruel o injurias graves" nos indica que no se ha establecido un criterio o medida específica para definir esos conceptos, debiendo resolverse cada caso de acuerdo con sus circunstancias peculiares, dentro del ejercicio de una sabia discreción judicial. Nelson, *Divorce and Annulment,* Vol. 1, pág. 229, 211. Pero, de otro lado, no podemos incurrir en una generalización excesiva, especialmente en cuanto a relaciones domésticas cuya creación, naturaleza y estabilidad responden a una pronunciada política pública y a un acentuado interés social. En esta clase de problemas se hace preciso el tener una perspectiva. No podemos ignorar la filosofía que anima la institución del matrimonio y que determina la destrucción de la unión matrimonial. El matrimonio no es un mero contrato cuyos términos y duración respondan a la voluntad espontánea de las partes. Es también una institución, en vista del interés del Estado en esa clase de relación. Ese interés se manifiesta, no sólo a través del establecimiento de formalidades y requisitos previos a la creación del vínculo, sino que también a través de la intervención estadual, mediante el proceso judicial, en la determinación de las causas específicas que jus-

tifiquen la cesación del contrato, esto es, el divorcio. Esa institución es "fundamental en el Derecho civil, puesto que es base de la familia". 1 Manresa, Comentarios al Código Civil Español, pág. 312, sexta edición. Es célula primordial de la sociedad y creador del hogar "que nació para el mutuo amor y en donde existen hijos inocentes". *Fernández* v. *Hernández*, 8 D.P.R. 237, 243. Es la unión legal de un hombre y una mujer para la plena comunidad de existencia. Manresa, ob. cit., Tomo I, pág. 313. Representa ser una forma elevada de asociación entre dos seres, a base de compañerismo, amor y mutuo respeto. Es la relación de dos personalidades que se ennoblecen y enriquecen mutuamente, intelectual y espiritualmente, a través de la inter-reacción de las características individuales de los cónyuges. Tiene el objetivo primario de una plena unión personal, y el objetivo adicional de la generación (Miraglia, *Comparative Legal Philosophy*, pág. 670), por el cauce ordenado de la familia, todo ello en beneficio de la vida social.

En vista de lo anteriormente expuesto, el interés público presupone la estabilidad y permanencia razonable del matrimonio. Pero el "desideratum" de la integridad de la unión matrimonial no implica que el matrimonio sea indisoluble, y así lo ha reconocido el legislador al señalar ciertas causas específicas de divorcio. La asociación conyugal se compone de seres humanos y si existe claramente una situación de infelicidad en el seno del matrimonio, que convierta la relación en intolerable e insostenible para uno de los cónyuges, el Estado no debe imponer la continuación de la unión, ya que, en ese caso, los propios fines del matrimonio quedarían frustrados. El matrimonio tiene un fin social, pero también tiene el objetivo de servir de vehículo de compañerismo, afecto, respeto y felicidad de los cónyuges. En ciertas ocasiones, el interés individual debe quedar relativamente subordinado al interés social. Pero, en cuanto al matrimonio, los derechos sociales no deben conllevar la destrucción de la personalidad

de los cónyuges. El matrimonio es necesario para el logro de la estabilidad social, pero no debe perpetuarse artificialmente hasta el punto en que se convierta en un martirologio. Las causas triviales, las pasiones momentáneas, las irritaciones transitorias, que caracterizan muchas relaciones humanas, deben ser toleradas en un matrimonio y no deben ser causa de divorcio, en vista de los elevados propósitos sociales e individuales de la unión conyugal. Pero el matrimonio no debe caracterizarse por el dolor permanente, y no debe implicar la imposición artificial de una renunciación mística que equivalga a seguir en un estado permanente de infelicidad y de ausencia de amor y respeto mutuo. Es cierto, como se dice en *Manich* v. *Quero*, 38 D.P.R. 93, 104, que el divorcio es un remedio extremo para una situación extrema y que el vínculo matrimonial sirve de base y de institución fundamental de la sociedad, no debiendo ser suficiente una prueba cualquiera para justificar la ruptura, y no debiendo convertirse el divorcio en fácil puerta de escape. Pero en *Axtmayer* v. *Ortiz*, supra, se reconoce que puede haber una situación que haga intolerable la vida entre los cónyuges, indicándose que podría ser procedente un divorcio por trato cruel o injurias graves si la conducta es "tal que destruye la tranquilidad del espíritu y felicidad de la parte agraviada, de manera tal que perjudique la salud o anule enteramente los fines legítimos del matrimonio."

En el caso de *De Burgh* v. *De Burgh*, 39 Cal.2d 858, resuelto el 25 de noviembre de 1952, se dice lo siguiente, a la página 863:

"La analogía ilusoria a la ley de contratos ignora el hecho básico de que el matrimonio es más que un contrato. Puede ser terminado solamente con el consentimiento del estado. En un procedimiento de divorcio el tribunal debe considerar, no solamente los derechos y los actos culposos de las partes, como ocurre en litigios sobre contratos, sino también el interés público en la institución del matrimonio. La familia es la unidad básica de nuestra sociedad, el centro de afectos personales que ennoblecen

y enriquecen la vida humana. Canaliza los impulsos biológicos que, en otra forma, podrían ser socialmente destructivos; garantiza la educación y cuidado de los hijos en un ambiente estable; establece la continuidad de una generación a la otra; estimula y desarrolla la iniciativa individual propia de un pueblo libre. En vista de que la familia es el núcleo de nuestra sociedad, la ley trata de alentar y preservar el matrimonio. Pero cuando un matrimonio ha fracasado y ha dejado de ser una unidad, los propósitos de la vida familiar ya no pueden ser cumplidos, y debe permitirse el divorcio. La política pública general no desalienta el divorcio cuando las relaciones entre los cónyuges son de tal naturaleza que los objetivos legítimos del matrimonio han quedado completamente destruídos. . . . Sería una degradación del matrimonio y una frustración de sus propósitos el que fuese utilizado por los tribunales como un artefacto de castigo."

En Nelson, *Divorce and Annulment*, se dice lo siguiente, en el Tomo I, pág. 214, al hablar de trato cruel o injurias graves:

"El matrimonio, en nuestra época, no es considerado como la encarcelación de dos bestias en una jaula para fines de procreación, a ser separados, si pelean, solamente cuando el más débil languidece de temor. Es una unión intelectual y espiritual en bien de la felicidad y el bienestar de las partes, para la educación y el cuidado de los hijos bajo las circunstancias más favorables posibles, para la promoción de la salud, virtud y moralidad de las partes y de sus hijos, y para la preservación de sus hogares. . . . El estado no tiene interés alguno en preservar la relación matrimonial cuando las partes alteren la paz de la comunidad con sus peleas y su inhumanidad, o cuando una de las partes no puede sostener más la relación sin perjuicio a su salud o cuando la relación se ha convertido en tan intolerable, debido a insultos y a injurias, que las partes no pueden resumir la cohabitación, y el matrimonio existe solamente de nombre, pero no de hecho."

A tono con los principios generales ya esbozados, la causal de trato cruel o injurias graves debe ser claramente establecida. El mal trato ocasional no es suficiente: el trato debe ser cruel. Las meras injurias leves esporádicas no cumplen los requisitos del estatuto: las injurias deben ser graves. La mera

asperidad o severidad del temperamento o rudeza del lenguaje o los arranques momentáneos e impetuosos de pasión; las recriminaciones aisladas; las desavenencias y disgustos transitorios; las injurias aisladas que sean producto de impulsos emocionales del momento, que son olvidados y no perduran y que son hijos de un acaloramiento o un arrebato fugaz del ánimo; el mal genio ocasional o rigorismo de carácter compatible con el amor y el afecto; las frases recriminatorias expresadas ocasionalmente en momentos de excitación, no deben ser suficientes de por sí para justificar una sentencia de divorcio por trato cruel o injurias graves. Cf. *Figueroa* v. *Pierluisi*, 25 D.P.R. 496; *Galip* v. *Drag*, 28 D.P.R. 818, 820; *Fernández* v. *Hernández*, supra; *Manich* v. *Quero*, supra; *Elliston* v. *Elliston*, 215 S.W.2d 63. Se trata entonces de reacciones humanas comprensibles, que no son perdurables y no demuestran una actitud permanente de hostilidad al compañero en el matrimonio. Son arranques emocionales que pueden producir irritación momentáneas, pero que no lesionan permanentemente el efecto y el respeto mutuos. Esos arrebatos dan margen para una actitud razonable de tolerancia y conciliación.

De otro lado, como ya hemos indicado, si los insultos son tan continuados, sistemáticos y repetidos que conviertan en intolerable la vida matrimonial, quedando destruídos los fines del matrimonio, debe decretarse el divorcio. En el caso de autos el tribunal a quo concluyó que el demandante había perdido su tranquilidad; que la actitud de la demandada era continua y persistente, y que el demandante pasaba por una situación "de tal intranquilidad, desasosiego y sufrimiento que le hace imposible a la vez la continuación de las relaciones matrimoniales." Esas son cuestiones de hecho que fueron resueltas por el tribunal de primera instancia. Esas conclusiones nos demuestran que el matrimonio en este caso ha perdido su base y su razón de ser. No debemos mantenerlo artificialmente, por fíat judicial, para que sirva "como la encarcelación de dos bestias en una jaula."