ENRIQUE OLIVIERI, demandante y apelado, *v.* LYDIA ESCARTÍN, demandada y apelante.

Número 11579.
*Sometido:* 11 de junio de 1956. *Resuelto:* 29 de junio de 1956.

*Gaetán Roberts & Alcalá,* abogados de la apelante; *José A. Suro,* abogado del apelado.

El Juez Asociado Señor Marrero emitió la opinión del Tribunal.

Esta es una acción de divorcio por la causal de trato cruel[1] instada por un marido contra su mujer. Se alegó en la demanda, esencialmente, que la demandada ha tratado cruelmente al demandante, negándose a cohabitar sexualmente con él, a disfrutar de la vida matrimonial y a cumplir con las obligaciones impuestas por dicha institución; que en repetidas ocasiones la demandada ha asistido a diferentes centros de diversión con terceras personas; que el 31 de diciembre de 1954 (sic) la demandada fué conducida a un cuartel de la policía y sometida a investigación por haber sido sorprendida discutiendo acaloradamente en la Avenida Ponce de León con una señora que la sorprendió con su ex-marido; y que a través de transacciones desconocidas para el demandante, la demandada obtenía dinero de varias personas sin que para ello, en forma alguna, diera su aprobación el demandante. Negados los hechos fundamentales de la demanda y trabada la contienda, fué el pleito a juicio, aduciendo una y otra parte prueba testifical en apoyo de sus respectivas contenciones. El tribunal a quo dictó sentencia declarando con lugar la demanda, disolviendo el vínculo matrimonial existente entre las partes y concediendo al demandante la custodia de las dos hijas menores de edad habidas en el matrimonio. Esa sentencia se fundó en una opinión, en la cual figuran las siguientes conclusiones de hechos probados:

"1.—Las partes contrajeron matrimonio el día 11 de abril de 1943.

---

[1] Véase 31 L.P.R.A. sec. 321.

"2.—Procrearon en su matrimonio dos hijas, llamadas Migdalia Ailyn y Silma Aixa, de nueve años la primera y de seis la segunda.

"3.—El demandante se separó de la demandada el 10 de febrero de este mismo año, al enterarse de que ella llevaba relaciones con un tal Rocco Perrotta, conocido por Blackie.

"4.—La certeza de que tales relaciones eran impropias a la fidelidad conyugal surge de los siguientes hechos:

"(a) El demandante no conocía a Rocco Perrotta.

"(b) la demandada fué vista con Perrotta el 14 de diciembre de 1953 en un sitio de diversión de Isla Verde;

"(c) También fué vista con él en su automóvil por su recién divorciada esposa el día 31 de enero siguiente, quien los siguió en el suyo;

"(d) Debido aparentemente a que su ex-esposa los seguía, él (Perrotta) dejó a la demandada en un cine de Santurce; pero más tarde fueron vistos nuevamente por aquélla cuando salían de un bar; y

"(e) El demandante encontró en una cartera de la demandada una placa de identificación (de empleados de correo) que pertenecía a Perrotta."

La demandada apeló. Sostiene ahora (1) que el tribunal inferior erró al resolver y concluir que la prueba en este caso, tal y como aparece del récord, es suficiente para disolver el matrimonio de las partes por la causal de trato cruel por parte de la mujer hacia el marido y (2) que la sentencia dictada por la corte inferior es contraria a derecho. Los errores así señalados pueden ser discutidos conjuntamente.

■■ Como se ha visto, el tribunal a quo no hizo conclusión alguna respecto a la negativa de la demandada a cohabitar con el demandante, como tampoco sobre la alegación al efecto de que la demandada obtenía dinero de varias personas sin la aprobación de su marido; esto, no obstante el hecho de que tanto una como otra parte ofrecieron prueba en relación con ambas cuestiones. La sentencia dictada por dicho tribunal se fundó exclusivamente en las relaciones existentes entre la demandada y un tal Rocco Perrotta.

Según los tratadistas, la conducta de un cónyuge hacia otra persona del sexo opuesto, aunque puede no constituir prueba efectiva de adulterio, a veces resulta tan persuasiva y convincente que los tribunales llegan a la conclusión de que la misma constituye trato cruel e inhumano y a base de esa conducta decretan el divorcio. Véanse: Schouler, *Divorce Manual*, ed. 1944, sec. 85(*a*), pág. 112; Keezer, *Marriage and Divorce*, tercera ed., por John W. Morland, sec. 370, pág. 436; Nelson, *Divorce and Annulment*, Vol. 1, segunda ed. (1945), sec. 6.20, pág. 268. En apoyo del anterior aserto estos tratadistas citan los casos de *Tschida* v. *Tschida*, 212 N.W. 193; *Begrow* v. *Begrow*, 127 N.W. 256; *Zumbiel* v. *Zumbiel*, 69 S.W. 708; *Glenn* v. *Glenn*, 146 Pac. 619; *Aitchison* v. *Aitchison*, 68 N.W. 573; *Craig* v. *Craig*, 105 N.W. 446; *Farley* v. *Farley*, 270 N.W. 711; *Holmes* v. *Holmes*, 23 So. 324; *Lowe* v. *Lowe*, 25 Atl.2d 781; *Hannon* v. *Hannon*, 284 N.W. 499; *Baldwin* v. *Baldwin*, 9 So.2d 717 y *Bearinger* v. *Bearinger*, 136 N.W. 1117. Estamos de acuerdo con ese principio. Sin embargo, hemos examinado los casos antes citados y en ellos la prueba fué mucho más fuerte y más convincente que en el de autos.

En *Morales* v. *Vélez*, 75 D.P.R. 960, 967, dijimos:

"Hemos resuelto que 'para romper un vínculo que es base de la institución fundamental de la sociedad', por la causal de trato cruel o injurias graves, 'no basta con una prueba cualquiera', *Manich* v. *Quero*, supra, siendo doctrina firmemente arraigada y tradicionalmente reconocida en el derecho, que *la parte que solicita el divorcio por la referida causal, está obligada a presentar evidencia preponderante y a hacer una demostración clara y satisfactoria de su caso*, *Manich* v. *Quero*, supra; *Hanireu* v. *Hanireu*, 26 A.2d 381, 383, (Md.); *Jacobson* v. *Jacobson*, 36 A.2d 189, 190 (Pa.), *debiendo probar actos específicos de crueldad o de injurias*, no siendo suficiente que declaren los testigos dando sus conclusiones o exponiendo opiniones o generalidades. Nelson *Divorce and Annulment*, 2da. ed., págs. 292, 293; *Walldren* v. *Walldren*, 63 S.W.2d 845, 847

(Ark.) ; *De Lisi* v. *De Lisi,* supra; *Esenwein* v. *Esenwein,* 167 Atl. 350, 351 (Pa.) ; *Edmond's Appeal,* supra.

"El matrimonio puede disolverse por una de las causas que prescribe el Código Civil. El estado no obliga a nadie a vivir maritalmente si existe motivo legal para el divorcio, pero si se solicita ese remedio, *el que lo pretenda, está en el deber de probar la causal que invoque, con evidencia, que de ser creída por el juzgador, tenga el efecto legal de establecerla. ...*" (Bastardillas nuestras.)

En sentido parecido, respecto a la prueba que es menester presentar en casos de divorcio por la causal de trato cruel, se expresó este Tribunal en *Marques* v. *Rivera,* 68 D.P.R. 719, 722; *Delgado* v. *Mercado,* 60 D.P.R. 585; *Gómez* v. *Trujillo,* 59 D.P.R. 468; *Manich* v. *Quero,* 38 D.P.R. 93 y *Figueroa* v. *Pierluisi,* 25 D.P.R. 496.

■ ¿Fué la prueba aducida en este caso tan robusta y convincente como lo exige la jurisprudencia antes citada, y demuestra esa prueba que la conducta de la esposa hacia su amigo Rocco Perrotta fué tal que a base de la misma debe decretarse el divorcio a favor del demandante? Una respuesta negativa se impone. De ello nos convence la detenida lectura que hemos hecho de la evidencia que desfiló ante el tribunal a quo y las conclusiones de hechos probados que en apoyo de su sentencia el mismo hizo. Esa sentencia se basa exclusivamente en la núm. 4 de sus conclusiones antes copiadas. Esa conclusión se subdivide en los incisos *a, b, c, d,* y *e.* Analicemos la evidencia que tuvo ante sí el tribunal sentenciador en relación con cada uno de esos incisos de esa conclusión:

(*a*) *El demandante no conocía a Rocco Perrotta.* En esta conclusión el tribunal a quo erró, ya que la prueba claramente demuestra que el demandante conoció a Perrota en una fiesta que siguió a las bodas del hermano de la demandada, cuando tanto el demandante, como Perrota, la demandada y otras personas fueron a un club nocturno llamado "Esquife". (Tr. Ev. págs. 45, 48 y 49.)

(*b*) *La demandada fué vista con Perrotta el 14 de diciembre de 1953 en un sitio de diversión de Isla Verde.* Sobre este particular declaró la testigo Rosita Brugueras, quien para aquel entonces era esposa de Perrotta y de quien se divorció días más tarde. Su testimonio al efecto fué en síntesis: que el 14 de diciembre vió a la demandada, a Perrotta, a otros dos hombres y a una señorita salir en automóvil del sitio de diversión conocido por "El Guadalquivir," en Isla Verde; que la demandada iba sentada al lado de Perrotta; que el automóvil no era el de éste; que ella los siguió en su carro pero no pudo darles alcance; y que eso ocurría como a las cinco y pico de la tarde de ese día. (Tr. Ev. págs. 61 y 65.)

(*c*) *También fué vista con él [Perrotta] en su automóvil por su recién divorciada esposa el día 31 de enero siguiente, quien los siguió en el suyo.* Rosita Brugueras declaró a ese efecto.(²) (Tr. Ev. págs. 58 y 65.)

(*d*) *Debido aparentemente a que su ex esposa los seguía, él [Perrotta] dejó a la demandada en un cine de Santurce; pero más tarde fueron vistos nuevamente por aquélla cuando salían de un bar.* Respecto a la primera parte de este inciso ya hemos dicho que la señora Brugueras vió a Perrotta dejar a la demandada frente al cine Metro. —Eso ocurría como entre dos y tres de la tarde de un domingo.— También manifestó esta testigo que el mismo día, como a las siete de la noche, vió a la demandada y a Perrotta salir del Arnie's Bar que queda frente al cine Metro; que ella inmediatamente

---

(²) Sobre este particular la demandada declara:

"De dos y media a tres, pues salí para el cine. Estando en la parada de la guagua, pasó el señor Perrotta en su carro. ...y al verme, como amigo de mi casa, de mi familia, se paró y me dijo que para dónde iba. Yo le dije que iba hasta el cine Metro. ...Él me dijo que si primero yo consentía que fuera a dar un pésame a un amigo en El Condado, me llevaba hasta el cine. Miré la hora y dije que estaba bien. Me llevó al Metro. ...Entonces en la parada de el Metro, la señora Rosa Brugueras paró detrás del carro e hizo ciertos comentarios, dirigiéndose a una de los ojos verdes. De allí, yo crucé y me metí al cine Metro. ...Yo llegué al cine como a las tres y cuarto, por ahí. ..." (Tr. Ev. págs. 129 y 130.)

."parqueó" su carro y que le dijo ciertas palabras a la demandada; que vino un policía en un *jeep* y se llevó tanto a ella como a la demandada para el cuartel, donde poco después las pusieron en libertad.([3])   (Tr. Ev. págs. 58 y 59.)

(*e*) *El demandante encontró en una cartera de la demandada una placa- de identificación (de empleados de correo) que pertenecía a Perrotta.*   A este respecto declararon tanto el demandante Olivieri como la señora Brugueras.([4])

Analizada la prueba que sirvió de base a las anteriores conclusiones del tribunal a quo nos encontramos con lo siguiente: (1) la demandada fué vista en un automóvil en el cual iban en total cinco personas, sentada junto a Perrotta; (2) se le vió en otra ocasión desmontarse del automóvil de Perrotta frente al cine Metro en Santurce, (3) se le vió salir de un bar, o frente a éste, como a las siete de la noche del mismo día, y (4) dentro del bolso de la demandada el demandante halló una placa de identificación correspondiente a Rocco Perrotta.   Aceptando como correctas, como tenemos que hacerlo, por haber prueba que las sostiene, todas y cada una de las anteriores conclusiones (excepción hecha, conforme ya hemos indicado, de la que se refiere al hecho de que el demandante no conocía a Rocco Perrotta) nos preguntamos nuevamente, ¿es la prueba creída por el tribunal a quo bastante en derecho para que por la causal de trato cruel declaremos roto y disuelto el vínculo matrimonial existente entre el demandante y la demandada?   Repetimos que no lo es. Al igual que en *Delgado* v. *Mercado*, supra, (pág. 595) diremos que: "no es que consideremos digna de encomio la

---

([3]) Sobre este incidente la demandada declaró que tan pronto terminó de ver la película salió del cine Metro y cruzó la calle con el propósito de trasladarse al Professional Building en la Avenida de Diego donde estaba recluída su cuñada; al cruzar se encontró con Rocco Perrotta, quien iba a pie; que no es cierto que entraran al Arnie's Bar; y que estando allí, en la parada, llegó la señora Brugueras.   También admite el incidente con la señora Brugueras en la parada y la conducción de ambas al cuartel.  (Tr. Ev. págs. 134, 135, 138 y 139.)

([4]) Sobre este incidente la demandada declaró que una de sus nenas encontró esa placa en la casa de ella.   (Tr. Ev. pág. 155.)

conducta de la demandada. No es un ejemplo a seguir. Mucho deja que desear." Sin embargo, no es posible concluir que esa conducta equivalga a la prueba robusta y convincente exigida por nuestra jurisprudencia para casos de esta naturaleza.

*Debe revocarse la sentencia apelada y declararse sin lugar la demanda.*

El Juez Asociado Sr. Negrón Fernández no intervino.

El Juez Asociado Sr. Belaval concurre en el resultado.

El Juez Asociado Sr. Saldaña disintió.