## En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| LIZA CRUZ SINIGAGLIA<br><br>Demandante-Recurrida<br><br>.V<br><br>EMPRESAS MASSO, ETC.<br><br>Demandadas-peticionarias | Certiorari<br><br>**98TSPR80** |

Número del Caso: **CC-96-358**

Abogados Parte Demandante-recurrida:

    Lic.Rafael Toro Cubergé

    (Lespier, Muñoz Noya)

Abogados Parte Demandada-recurrente:

    Lic. Julio I. Lugo Muñoz

Abogados Parte Interventora:

Tribunal de Instancia: Superior, PONCE

Juez del Tribunal de Primera Instancia:

    Hon. LEIDA GONZALEZ DEGRO

Tribunal de circuito de Apelaciones: **PONCE Y AIBONITO**

Juez Ponente: **Hon. SANCHEZ MARTINEZ**

Panel integrado por su Presidente, Juez **Sánchez Martínez** y los Jueces **Córdova Arone** y **Segarra Olivero**

Fecha: 6/25/1998

Materia: **ACCION CIVIL**

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

## EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Liza Cruz Sinigaglia

Demandante-recurrida

CC-96-358

v.

Empresas Massó, etc.

Demandadas-peticionarias

### SENTENCIA

San Juan, Puerto Rico, a 25 de junio de 1998

En el presente caso, el 22 de abril de 1996, el Tribunal de Circuito de Apelaciones, Circuito Regional de Ponce y Aibonito, dictó una sentencia revocando la emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce el 25 de octubre de 1995.

Inconforme con esta determinación, las demandadas peticionarias, Empresas Massó, Caguas Lumber Yard, Inc. y Ferretería Massó, presentaron oportunamente ante este Tribunal una petición de certiorari. Decidimos revisar y expedimos el recurso.

Luego de estudiar y analizar los alegatos de las partes y los documentos unidos al apéndice del recurso, el Tribunal resolvió revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones. Sin embargo, no hay opinión del Tribunal. La votación de los Jueces fue la siguiente: el Juez Asociado señor Fuster Berlingeri emitió opinión de conformidad, a la cual se unió el Juez Asociado señor Negrón García; el Juez Asociado señor Corrada del Río también emitió opinión de conformidad, pero por distintos fundamentos, el Juez Presidente señor Andréu García se unió a esta última; la Juez Asociada señora Naveira de

Rodón emitió opinión disidente confirmando la dictada por el Tribunal de Circuito de Apelaciones, a la cual se unió el Juez Asociado señor Hernández Denton; y el Juez Asociado señor Rebollo López concurre con el resultado de la opinión emitida por la Juez Asociada señora Naveira de Rodón, pero no se une a ella. Por no haber una opinión del Tribunal, se emite la presente sentencia revocando la dictada por el Tribunal de Circuito de Apelaciones.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Isabel Llompart Zeno

Secretaria del Tribunal Supremo


# EN EL TRIBUNAL SUPREMO DE PUERTO RICO

LIZA CRUZ SINIGAGLIA

Y OTROS

Demandante-Recurrida

vs. CC-96-358 CERTIORARI

EMPRESAS MASSO Y OTROS

Demandado-Recurrente

Opinión de Conformidad emitida por el Juez Asociado señor **FUSTER BERLINGERI**, a la cual se une el Juez Asociado señor **NEGRON GARCIA**.


San Juan, Puerto Rico, a 25 de junio de 1998.

En el caso de autos procede que se revoque el dictamen del Tribunal de Circuito de Apelaciones y que se reinstale el del foro de instancia.

La única cuestión ante nos, en esencia, es si el despido de una empleada de la empresa recurrente se hizo en violación de la Ley

3 de 13 de marzo de 1942, 29 L.P.R.A. sec. 467 <u>et seq</u>., que prohíbe el discrimen en el trabajo por razón de embarazo.

Aquí el Tribunal de Primera Instancia, Sala Superior de Ponce, correctamente denegó la reclamación presentada por la empleada al amparo de dicha Ley 3. Determinó como cuestión de hecho que no había mediado ningún tipo de discrimen por razón de sexo en el despido de Liza Cruz Sinigaglia; y que dicho despido no

se debió al estado de embarazo de la empleada. Concluyó, pues, que no procedía ninguna indemnización bajo la Ley 3. También concluyó que como la empleada no había invocado la Ley 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185 <u>et seq</u>, no se podía hacer determinación alguna sobre si procedía conceder un remedio por despido injustificado. El foro apelativo revocó el dictamen referido de instancia, por entender que la empleada tenía derecho a compensación al amparo de la Ley 3.

El Tribunal de Circuito de Apelaciones erró al revocar el foro de instancia y al resolver que el patrono en este caso no había rebatido la presunción de ley de que la empleada había sido despedida por razón de su embarazo. El patrono en el caso de autos, tenía a su favor un historial positivo de haber empleado en su empresa a un gran número de mujeres que habían estado embarazadas. Habían trabajado allí mientras estaban preñadas, dieron a luz sus hijos y regresaron al empleo, sin problema alguno. Así lo determinó expresamente el foro de instancia.

Dicho foro también determinó expresamente que en el caso de autos Liza Cruz e Ismael Quintana fueron despedidos ambos específicamente por mantener una relación adulterina mientras trabajaban para la empresa del patrono. La situación de estos dos empleados, según el patrono, empañaba la buena imagen de la empresa. Resolvió, además, el tribunal sentenciador que el embarazo de Liza Cruz, resultante de la relación adulterina aludida, <u>nada tenía que ver con su despido</u>. Determinó que la condición de embarazo era un <u>hecho accidental</u> a la razón para el despido, y que el patrono hubiese despedido igualmente a dicha empleada si se hubiera enterado de su relación adulterina con Quintana, antes de que ella quedara embarazada.

Frente a estas determinaciones de hechos tan claras y contundentes, no tiene sentido jurídico alguno concluir, como decidió el foro apelativo, que el despido se hizo en violación de la Ley 3, que prohíbe el discrimen en el empleo por razón de embarazo. Como señaláramos en nuestro disenso en <u>Padilla Colón v. Centro Gráfico del Caribe</u>, opinión del 4 de marzo de 1998,

___ D.P.R. ___, 98 JTS 21, dicha Ley sólo prohíbe el despido cuando éste se hace precisamente por el mero hecho de estar la mujer embarazada, o si se hace por una merma en la producción de la mujer, ocasionada por su embarazo. Ninguna de esas dos situaciones estuvieron presentes en el caso de autos, por lo que el dictamen del foro de instancia es claramente correcto y debe mantenerse.

El resultado neto de la decisión del foro apelativo es insostenible. Significaría que, en una situación en la cual un hombre y su amante son ambos despedidos específicamente por haber sostenido una relación adulterina entre ellos, el hombre no tiene remedio alguno respecto a tal despido, pero la mujer, por el mero accidente de su embarazo, se beneficiaría de las severas sanciones de la Ley 3. Como se sabe, ésta obliga al patrono, no sólo a reponer a la mujer en su empleo, sino además a pagarle los salarios dejados de percibir <u>más una suma igual al doble del importe de los daños causados</u>. Este resultado tan desigual hace patente en este caso el error de resolver que el despido de ella fue en violación de la Ley 3, como lo hizo el foro apelativo. Claramente procede que se revoque su sentencia.

Para concluir, debe señalarse, además, que como la empleada demandante no reclamó ningún otro remedio, ni puso al foro sentenciador en posición de determinar si su despido se hizo sin justa causa, independientemente de la reclamación de despido por razón de embarazo, no procede que se decida en revisión si el despido fue justificado. No puede este Foro hacer dictamen alguno sobre el particular, sin base alguna en el expediente del caso o en las alegaciones ante nos o ante el foro apelativo. Tal actuación claramente <u>ultra vires</u> es sólo una racionalización para evitar admitir el significado correcto de la Ley 3.

**Jaime B. Fuster Berlingeri**

Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Liza Cruz Sinigaglia

Demandante Recurrida

CC-96-358 CERTIORARI

v.

Empresas Massó y otros

Demandado Recurrente

    Opinión de Conformidad emitida por el Juez Asociado señor **CORRADA DEL RIO**, a la cual se une el Juez Presidente señor **Andréu García**.


San Juan de Puerto Rico, 25 de junio de 1998.

"En el ejercicio de sus derechos y en el disfrute de sus libertades, toda persona estará solamente sujeta a las limitaciones establecidas por la ley con el único fin de asegurar el reconocimiento y el respeto de los derechos y libertades de los demás, **y de satisfacer las justas exigencias de la moral, del orden público y del bienestar general en una sociedad democrática.**"

                                I

*Estamos conformes con la sentencia emitida por este Tribunal en el día de hoy toda vez que, en nuestra opinión, los hechos presentados por el caso de autos son claramente distinguibles de los existentes en Padilla Colón v. Centro*

*Gráfico del Caribe, Op. de 4 de marzo de 1998,* 98 J.T.S. 21. Particularmente, en el presente caso el Tribunal de Primera Instancia no concluyó que el despido de la recurrida fuera injustificado, como ocurrió en el de *Padilla Colón v. Centro Gráfico del Caribe, supra,* sino que por el contrario, en su dictamen la juez de instancia (Hon. Leida González Degró) señaló que el despido de la recurrida Liza Cruz Sinigaglia se produjo a raíz de la relación adulterina sostenida por ésta y un co-empleado de la sucursal de las Empresas Massó en Ponce Playa, el Sr. Ismael Quintana. A juicio de la ilustrada sala sentenciadora, el Sr. Gildo Massó, dueño de la compañía, consideraba que dicha relación ilícita mancillaba la imagen de la empresa lo que provocó la destitución de **ambos** empleados. Dicho foro concluyó, de acuerdo a la totalidad de la evidencia presentada ante su consideración, que el patrono había rebatido satisfactoriamente la presunción de discrimen y por lo tanto la

recurrida no tenía derecho a los remedios de la Ley de Madres Obreras, Ley Núm. 3 de 13 de marzo de 1942, 29 L.P.R.A. sec. 467 *et seq.*

La ocurrencia de este tipo de acto delictivo contra el Estado Civil entre dos empleados de las Empresas Massó, le confiere al patrono justa causa para el despido de ambos. Veamos.

## II

La sec. 185b de la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185b, dispone en lo pertinente que "[s]e entenderá por justa causa para el despido de un empleado de un establecimiento: (a) Que el obrero siga un patrón conducta **impropia o desordenada**. [...]". Aunque la ley hace referencia a "un patrón de conducta impropia" por parte del empleado, esto no es óbice para que el patrono despida justificadamente a un empleado por un sólo acto ofensivo siempre y cuando éste haya sido lo suficientemente grave como para amenazar el orden, la seguridad o el buen funcionamiento del establecimiento y las circunstancias del caso no demuestren que la decisión tomada fue arbitraria o caprichosa. *Secretario del Trabajo v. I.T.T.,* 108 D.P.R. 536, 544 (1978).

Tampoco es necesario consignar en un reglamento que la conducta específica en controversia será motivo de destitución inmediata para que el despido sea justificado si la falta u ofensa es de una magnitud considerable, **y su impropiedad es de conocimiento generalizado,** de tal manera que una persona razonable de inteligencia promedio comprenda la gravedad de la acción y que la misma será inaceptable. A. Acevedo Colom, *Legislación Protectora del Trabajo Comentada,* págs. 157-58 4ta Ed. (1996).

A la luz de lo anteriormente expuesto, debemos considerar, pues, si la conducta de la recurrida y del señor Quintana constituye justa causa para el despido.

## III

Es innegable el eminente interés público orientado a preservar la unidad familiar y proteger la estabilidad de la institución matrimonial "en virtud de la cual un hombre y una mujer se obligan mutuamente a ser esposo y esposa, **y a cumplir el uno para con el otro los deberes que la <u>ley</u> les impone**". (Énfasis nuestro.)

En *Pueblo v. Tribunal Superior*, 99 D.P.R. 30, 36 (1970) señalamos que "en nuestra sociedad, y en las sociedades del pasado, ha existido siempre un interés público en la conservación del matrimonio, piedra angular de la familia. Nuestro Código Civil confiere al contrato matrimonial categoría de institución social".

El matrimonio es después de todo la "institución fundamental y eje central de nuestra sociedad, [que] continúa siendo la base de la familia y de la vida social". Por otra parte, el Art. 88 del Código Civil de Puerto Rico, consigna los deberes mínimos con los que las parejas se comprometen a cumplir *libremente* dentro de un matrimonio: "[l]os cónyuges están obligados a **vivir juntos, guardarse fidelidad y socorrerse mutuamente**". Debido a que el adulterio representa la más grave violación a dicho deber de fidelidad, el inciso (1) del Art. 96 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 348, lo contempla como la primera de las causales de divorcio.

No obstante, debido a la naturaleza furtiva de las relaciones adulterinas, la prueba presentada por la parte que solicita el divorcio por esta causal, aunque puede resultar ser insuficiente para probar los elementos de la misma, en muchos casos "resulta tan persuasiva y convincente que los tribunales llegan a la conclusión de que la [conducta de un cónyuge] constituye trato cruel e inhumano y a base de esa conducta decretan el divorcio". *Olivieri v. Escartín,* 79 D.P.R. 535,538. Ello explica el reducido número de divorcios decretados anualmente por la causal de adulterio.

Mas no podemos olvidar que en nuestra jurisdicción, el adulterio es también conducta delictiva, toda vez que la misma fue tipificada en la última revisión del Código Penal de Puerto Rico. A tenor con el Art. 129 de dicho código, el delito de adulterio se configura cuando una persona casada sostiene relaciones sexuales con otra persona que no es su cónyuge. Por otra parte, si como en el caso de autos el delito se comete entre una persona casada y otra soltera, esta última también responde criminalmente y de la misma manera que la persona casada.

El adulterio no sólo constituye una vejación y un atropello a la dignidad del otro cónyuge como ser humano y como esposo o esposa, sino que además representa una agresión a la institución social de la familia matrimonial en la cual el Estado tiene puestas sus esperanzas para la debida formación intelectual y emocional de los hijos. Para que se lleve a cabo adecuadamente

esta ingente tarea es necesario que exista la más estrecha colaboración entre los padres y los demás miembros allegados al núcleo familiar, por lo que el Estado proscribe —mediante la penalización de la infidelidad conyugal— la conducta adulterina como una gran amenaza a la estabilidad e integridad de la familia.

## IV

Ceñidos a la controversia ante nos, la naturaleza delictiva del acto adulterino ocurrido entre la recurrida y su compañero de trabajo, resalta la gravedad de la falta y subraya su notoriedad, de manera que si un tipo de conducta es lo suficientemente impropia o inaceptable como para que **la sociedad** la considere como constitutiva de delito, tal conducta es igualmente reprochable, impropia y desordenada como para que un patrono pueda razonablemente y con justa causa recurrir al despido de las personas que incurren en la misma. Por ello no podemos calificar la destitución de la recurrida como una actuación caprichosa de parte de la gerencia sino más bien como una medida legítima dirigida a preservar el orden y el buen funcionamiento de la empresa.

Los hechos del caso de marras no sólo demuestran que el señor Massó veía la escandalosa relación como una **mancha inaceptable en la imagen de su empresa familiar**, sino que las manifestaciones del propio señor Quintana previas a su renuncia, reflejan que éste estaba al tanto de cuál iba a ser la consecuencia de sus actos si la gerencia advenía al conocimiento de los mismos. Por esta razón, luego de relatarle su relación amorosa con la señora Cruz y solicitarle un traslado a su amigo y jefe Irving de Jesús, gerente de la sucursal de Ponce Playa, el señor Quintana le suplicó que no informara a la alta gerencia acerca de dicha relación. La respuesta del señor De Jesús es también muy reveladora ya que éste le advirtió que en la eventualidad de que se desenmascarara la verdadera naturaleza de la relación, se vería obligado a notificarlo a la alta gerencia, es decir, al señor Massó. Por último, resulta evidente que si el señor Quintana y el señor De Jesús claramente conocían lo inaceptable de la relación y las perniciosas consecuencias a las que estaban exponiéndose los compañeros de trabajo, ciertamente también la recurrida conocía o debía conocer la gravedad de la falta debido a que era ella la que incumplía directamente con uno de los deberes que la ley le impone a toda persona casada.

La seriedad de dicha falta, cuya proscripción penal la hace de conocimiento generalizado, acompañado por el claro interés

público del Estado en preservar y proteger la institución del matrimonio y de la familia, constituyen justa causa para el despido.

Por lo antes expuesto, reiteramos nuestra conformidad con la sentencia de este Tribunal mediante la cual se revoca la emitida por el Tribunal de Circuito de Apelaciones y, por ende, se mantiene en vigor la dictada por el tribunal de instancia.

**BALTASAR CORRADA DEL RIO**

JUEZ ASOCIADO

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Liza Cruz Sinigaglia

Demandante-recurrida

v. CC-96-358

Empresas Massó, etc.

Demandados-peticionarios

Opinión disidente emitida por la Juez Asociada señora **Naveira de Rodón** a la cual se une el Juez Asociado señor **Hernández Denton**

San Juan, Puerto Rico, a 25 de junio de 1998

Por entender que el dictamen emitido por el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) es esencialmente correcto, disentimos. A continuación expondremos los hechos pertinentes del caso, según probados ante el foro de instancia, y los fundamentos para nuestro disenso.

**I**

La demandante Liza Cruz Sinigaglia comenzó a trabajar en las Empresas Massó (en adelante Massó) el 19 de agosto de 1990. Específicamente laboraba en el "Show Room" de la sucursal ubicada en la

Playa de Ponce. Mientras trabajaba allí, sostuvo una relación amorosa con el Sr. Ismael Quintana Ortiz, empleado de la misma sucursal. Para este tiempo, la señora Cruz Sinigaglia estaba casada con otra persona.

En el mes de enero de 1992, la señora Cruz Sinigaglia quedó embarazada del señor Quintana Ortiz. Este le comunicó al gerente de la sucursal, Sr. Irving De Jesús, lo que estaba ocurriendo. Además, solicitó que lo trasladaran a otra sucursal. Ante esta situación, el señor De Jesús le informó al Director de Recursos Humanos de la empresa, Sr. Nicolás Santana, sobre la relación que sostenían estos empleados.

Según las determinaciones de hecho del Tribunal de Primera Instancia, aparentemente el Director de Recursos Humanos le explicó la situación al dueño de la empresa, Sr. Gildo Massó González.

El 16 de marzo de 1992, el señor Massó González se presentó a la sucursal de la Playa de Ponce y se reunió por separado con el señor Quintana Ortiz y con la señora Cruz Sinigaglia. En estas reuniones, el señor Massó González le pidió la renuncia a cada empleado, dictándoles la respectiva carta.

A consecuencia de lo anterior, la señora Cruz Sinigaglia presentó una demanda contra las empresas Massó en el entonces Tribunal Superior de Puerto Rico, Sala de Ponce. Alegó que había sido obligada a renunciar a su trabajo porque había informado que estaba embarazada, lo que "constitu[ía] una violación [al] derecho constitucional que prohibe el discrimen por razón de sexo", según el Artículo II, Sección 1 de la Constitución del Estado Libre Asociado de Puerto Rico. Asimismo, señaló que su despido había sido forzado y no tenía justificación, lo que constituía una "violación a sus derechos constitucionales al discriminar en contra de ella por ser mujer". Solicitó que se le concediera una partida de daños por la cantidad de novecientos cinco mil cuatrocientos ochenta y ocho dólares ($905,488), de acuerdo con la Ley Núm. 100 de 30 de junio de 1959, según enmendada por la Ley Núm. 116 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 146 et seq.

En su sentencia, el foro de instancia determinó como cuestión de hecho que no había mediado ningún tipo de discrimen por razón de sexo en el despido de la señora Cruz Sinigaglia. Además, resolvió que el despido no se debió al estado de embarazo de la demandante, sino a la relación amorosa que sostenía con el señor Quintana Ortiz. Consideró la juez de instancia que la demandada

Massó había derrotado la presunción que se activa cuando se alega que un despido ocurrió por razón de embarazo, según lo dispone la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, 29 L.P.R.A. sec. 467 et seq., y lo resuelto en Rivera Aguila v. K-Mart de P.R., 123 D.P.R. 599 (1989), ya que se había probado mediante preponderancia de la prueba que el despido se debió a la relación adulterina entre los empleados de la misma sucursal. Por lo tanto, determinó que no procedía ningún tipo de indemnización bajo esta ley. Asimismo, concluyó que como la señora Cruz Sinigaglia no había invocado la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185a et seq., no se podía hacer determinación alguna sobre si procedía conceder algún otro remedio.

Inconforme con esta determinación, la señora Cruz Sinigaglia acudió ante el Tribunal de Circuito, alegando que el foro de instancia se había equivocado al resolver que no había ocurrido ningún tipo de discrimen por razón de sexo por estar embarazada, y al determinar que la demandada Massó había cumplido con su peso de prueba.

Por su parte, el Tribunal de Circuito, en su sentencia de 22 de abril de 1996, determinó que la demandada Massó no había rebatido la presunción que surge en reclamaciones bajo la Ley Núm. 3, supra, de que el despido de toda mujer embarazada se considera injustificado. Esto se debió a que la prueba del patrono se limitó a intentar probar que la señora Cruz Sinigaglia había renunciado. Por eso concluyó que no se había establecido la justa causa para el despedido. En consecuencia, revocó la sentencia del tribunal de instancia y devolvió el caso para que dicho foro determinara cuál era la compensación a la que tenía derecho la señora Cruz Sinigaglia bajo la Ley Núm. 3, supra.

Oportunamente, la demandada Massó recurrió ante nos mediante recurso de certiorari, el cual fue expedido el 1° de noviembre de 1996. Planteó la comisión de un único error, a saber:

> Erró el Tribunal Apelativo al entender que era aplicable la Ley de Madres Obreras y que no [se] rebati[ó] la presunción que esta alegadamente contiene.

## II

La Ley Núm. 3, supra, es una legislación que busca proteger a un sector en específico de la fuerza laboral: la mujer embarazada o

que recién ha dado a luz. Esta ley "está encaminada a salvaguardar los derechos de las trabajadoras embarazadas, estableciendo un período de descanso tanto antes como después del alumbramiento, y a prohibir el despido, suspensión, reducción de salario o discrimen de cualquier índole contra la obrera...." García Pagán v. Shiley Caribbean, etc., 122 D.P.R. 193, 199 (1988).

En específico, esta ley establece en su Sección 4 lo siguiente:

> El patrono no podrá, sin causa justa, despedir a la mujer embarazada. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo. (Énfasis nuestro.) 29 L.P.R.A. sec. 469.

Interpretando esta disposición, en Rivera Aguila v. K-Mart de P.R., supra, a la página 610, resolvimos que:

> una vez entablada una acción por la obrera, mediante la cual reclamó resarcimiento por haber sido despedida de su empleo sin justa causa mientras estaba embarazada, el patrono viene obligado a alegar en su contestación los hechos que motivaron el despido. Es al patrono ... a quien le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado. El peso de la prueba se desplaza de la parte demandante recurrente hacia el demandado recurrido, y es sobre éste que recae el onus probandi. Arts. 2 y 8 de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185b y 185h; Srio. del Trabajo v. I.T.T., 108 D.P.R. 536, 546 (1979). En reclamaciones al amparo de la Ley Núm. 3, supra, surge, pues, una presunción de despido injustificado que el patrono viene obligado a rebatir. Regla 14 de Evidencia, 32 L.P.R.A. Ap. IV. Es al patrono al que le corresponde persuadir al juzgador de la no existencia del hecho presumido: el despido injustificado. Hawayek v. A.F.F., 123 D.P.R. 526 (1989).

Existe una presunción a favor de la obrera embarazada, de que una vez presenta una reclamación bajo la Ley Núm. 3, supra, su despido fue injustificado y le corresponde al patrono probar la justa causa para el mismo.

Recientemente, ampliamos esta interpretación en el caso Padilla Colón, etc. v. Centro Gráfico del Caribe, Inc., etc., Op. de 4 de marzo de 1998, ___ D.P.R. ___ (1998), 98 JTS 21. Allí resolvimos específicamente cuándo una empleada puede llevar una acción bajo la Ley Núm. 3, supra. En lo pertinente, expresamos que el análisis a seguir en este tipo de reclamación no es si el despido estuvo motivado por la condición de embarazo; más bien, hay que determinar si, estando embarazada la empleada, el patrono la despidió sin causa justificada. Id., pág. 627.

Una vez expuesto el derecho pertinente, procede que lo apliquemos a la situación de hechos ante nuestra consideración.

### III

En primer lugar, plantea la demandada Massó que no se le puede conceder remedio alguno a la señora Cruz Sinigaglia bajo la Ley Núm. 3, supra, porque no invocó su aplicación en la demanda ni en los alegatos sometidos en apelación. No le asiste la razón. Veamos.

Según la Regla 43.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III, "[t]oda sentencia concederá el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones...". Es decir, los tribunales concederán lo que en derecho proceda y no lo que se les solicita. Marín v. Fastening Service System, Inc., Op. de 7 de febrero de 1997, 142 D.P.R. ___ (1997), 97 JTS 17; Sánchez v. Eastern Air Lines Inc., 114 D.P.R. 691, 695 (1983). Por otro lado, la demanda sirve para notificar a la parte adversa, a grandes rasgos, de las reclamaciones y defensas que se tienen en su contra. Rivera Flores v. Cía. ABC, Op. de 15 de febrero de 1995, 138 D.P.R. ___ (1995), 95 JTS 22, pág. 672. Además, véanse: Moa v. E.L.A., 100 D.P.R. 573 (1972); y Sierra v. Tribunal Superior, 81 D.P.R. 554 (1959). Además, hemos interpretado que la súplica no es parte propiamente de las alegaciones aunque ayuda a interpretarlas. Moa v. E.L.A., supra.

En las alegaciones de su demanda, la señora Cruz Sinigaglia reclamó que había sido obligada a renunciar porque estaba embarazada y esto constituía un despido forzado sin justificación. Párrafos 5 y 6 de la demanda. Este lenguaje fue

suficiente para notificarle a la demandada Massó sobre la naturaleza de la reclamación y la posible aplicabilidad de la Ley Núm. 3, supra, aun cuando no se nombrara específicamente bajo qué ley se estaba ejerciendo la causa de acción.

Sobrepasado este escollo procesal, procede que determinemos, según surge del expediente del caso y de la transcripción de evidencia, si la demandada Massó logró rebatir la presunción de despido injustificado que favorece a la señora Cruz Sinigaglia.

La teoría del patrono Massó fue que no se había despedido a la señora Cruz Sinigaglia, sino que ésta había renunciado. Según el tribunal de instancia, le mereció mayor credibilidad la prueba de la demandante, estableciendo que había sido obligada a renunciar. La prueba de la demandada Massó se limitó al testimonio del señor Massó González y al documento titulado "Informe de Maternidad Pagada Durante los Años 1990-91-92". En síntesis, éste declaró que la señora Cruz Sinigaglia le había pedido reunirse con él; que en dicha reunión le solicitó un traslado de sucursal; que como no había plazas disponibles en otras sucursales, ella tomó un papel y escribió allí mismo su carta de renuncia; y que en ese momento no conocía del embarazo de la señora Cruz Sinigaglia. Al foro de instancia no le mereció credibilidad esta versión de los hechos.

Cabe señalar además, que de este testimonio no surge ni un ápice de evidencia que pueda constituir justa causa para el despido. Erró el tribunal de instancia, al resolver que como el patrono había probado mediante preponderancia de la prueba que el despido no se debió al estado de embarazo de la señora Cruz Sinigaglia, a ésta no la protegía la Ley Núm. 3, supra. Estando la señora Cruz Sinigaglia embarazada al momento de su despido y siendo este hecho de conocimiento del patrono, éste no podía despedirla sin justa causa. Como no se presentó prueba para demostrar que el despido fue justificado, no erró el Tribunal de Circuito al determinar que la Ley Núm. 3, supra, y sus remedios aplican al caso de autos.

**IV**

Debemos tratar un último punto. En su escrito de certiorari la demandada Massó señala parcamente que "si aplicare una presunción [de despido injustificado] de las características expuestas por la sentencia del Tribunal apelativo, la misma sería irrazonable y posiblemente inconstitucional". Aduce que se ha creado una presunción teóricamente rebatible, pero que en la

práctica sería irrebatible en los casos tramitados bajo la Ley Núm. 3, supra. No tiene razón.

Según explicáramos, la Ley Núm. 3, supra, se activa cuando una mujer que está embarazada, es despedida de su empleo, y el patrono conoce este hecho. Se establece la presunción, no de que fue despedida por estar embarazada, sino de que el despido fue sin justa causa. Al patrono entonces le toca rebatir y establecer que el despido estuvo justificado. Esta presunción no es irrefutable. En realidad, esta ley es análoga a la Ley Núm. 80, supra, y por eso se utiliza un análisis similar al resolver controversias relacionadas con las mismas. Ambas leyes se distinguen en dos aspectos fundamentales: (1) la compensación dada al empleado despedido y (2) que no constituirá justa causa para el despido de la mujer embarazada el menor rendimiento en el trabajo. Por lo tanto, y tal como la presunción de la Ley Núm. 80, supra, no es arbitraria, caprichosa ni irrefutable, tampoco consideramos que la presunción de despido injustificado bajo la Ley Núm. 3, supra, es irrazonable.

## V

Por los fundamentos antes expuestos, disentimos del curso seguido por la mayoría y confirmaríamos el dictamen del Tribunal de Circuito de Apelaciones.

**Miriam Naveira de Rodón**

Juez Asociada

Retornar al índice anterior